### TEXAS & P. RY. CO. v. WILLIAMS.

#### (Circuit Court of Appeals, Fifth Circuit. April 24, 1894.)

#### No. 175.

1. MASTER AND SERVANT—ASSAULT BY RAILWAY CONDUCTOR—SCOPE OF EMPLOYMENT.

In an action against a railway company for an assault committed by its conductor, there is no question to be submitted to the jury as to whether such conductor was acting beyond the scope of his employment, when his own testimony shows that such assault was committed in resenting an insult which he had provoked by his language and conduct while acting as conductor.

2. SAME—PLEADING AND PROOF.

Under allegations that plaintiff was knocked and kicked from defendant's railway train by its conductor, he may recover on proof that the conductor alarmed him to such an extent that he jumped off the train; forcing him off the train in an unlawful manner being the gravamen of the complaint.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This was a suit for personal injuries, brought by Louis Williams, defendant in error, against the plaintiff in error, in which he alleged that he was a section hand in the service of plaintiff in error, and while riding on one of the regular passenger trains from Dallas to his place of work, by permission of the road master, he was assaulted and beaten and kicked from the train by the company's conductor in charge. The case being removed from the state

court where it was commenced to the circuit court of the United States for the northern district of Texas, and brought to trial, the jury found a verdict for the plaintiff in the sum of $1,562, damages.

The facts of the case, as testified to by the conductor and found in the record, as far as necessary to decide the questions arising herein, are these: Williams, the plaintiff below, upon being found without a ticket in a car of one of defendant's trains soon after leaving Dallas, was asked for his fare, and replied that he was being passed down on the train by the road master, who was on board. The conductor, Nicely, made inquiry of the road master, pointing out Williams to him, but the road master denied having given Williams any permission to ride free. Upon this the conductor again demanded the fare, telling Williams that he would have to pay, when Williams replied that he had no money, and could not pay his fare, whereupon the conductor told him to get out at the next stop, and stay off. The language of Nicely, the conductor, in testifying in regard to the subsequent assault, is: "We got to talking then, and finally he intimated that the road master had lied. I told him not to call the road master a liar, and he rather intimated that I was lying myself. He said, if the road master said he did not tell him to get on, he lied. I told him not to call me a liar, and he intimated that, if I or any one else said the road master did not tell him to get on there, they lied. I struck him three or four times with my left hand, and may have hit him once or twice with my right hand, but my right arm was in a bad condition, and I could not use it well." After this the testimony shows that Williams declared that he would not stand it, getting up from his seat. The conductor, knowing Williams to be a much larger and more powerful man than he, took a knife from his pocket, and told him he would have to stand it, for, if he put his hand on him, he would cut his throat. At this Williams rushed through the door, out upon the platform, and jumped from the moving train. Upon cross-examination, Nicely explains more fully what occurred at the time when, in his direct examination, he states, "We got to talking." He says: "When I went back in there, after talking to the road master, I do not remember the exact words that passed between us. I may have said he was a damned lie. I do not know that I told him in addition that he was a d——d black son of a bitch. It is not a fact that I did not say anything about fare when I went back there after talking to the road master. I asked him for his fare, and gave him all the opportunities a man wanted to pay it. He told me he did not have any money. * * * As to whether I cursed him before he insulted me, I may have used some strong language in talking to him. Sometimes I swear, and I may have sworn on this occasion, but, after I struck him, there was not much said." The testimony on behalf of the plaintiff is not in the record, but, in the bill of exceptions, it is admitted that it "tended strongly to sustain all the allegations in his petition."

Upon the trial, the charge of the court in which it is claimed the court erred was: "If plaintiff was a trespasser on defendant's train, and had no right to be there, and the conductor demanded his fare, and he declined to pay it, then the conductor had the right to stop the car, and to put plaintiff off, using no more force than was necessary for that purpose; but if the plaintiff intimated to the conductor that the road master and the conductor were lying in the matter of the pass which plaintiff claimed the road master had promised him, and thereupon the conductor beat plaintiff over the head with his fist and ticket punch, and cursed and abused him, and afterwards drew his pocket knife, and alarmed plaintiff to such an extent that he jumped off the car while the train was in motion, at its usual rate of speed, at that place, then you will find for the plaintiff reasonable compensation for the bodily injuries he received from such assault and battery from the conductor and his fall from the cars, when he jumped off." This charge was excepted to, and the court requested to charge: "You are instructed that if you believe from the evidence that plaintiff was upon the train at the time in question not by authority of the road master, and that he had time to tender his fare before he was ejected from or jumped from the train, which fact you will determine from the evidence, and you further find from the evidence that the assault committed by the conductor upon the plaintiff was made solely by

said conductor to resent a real or fancied insult, and that the action of the conductor was actuated solely thereby, you will find for the defendant,"—which charge the court refused to give. Giving the charge given, and refusing that asked, were excepted to, and have been assigned as error.

T. J. Freeman, for plaintiff in error.

M. M. Parks, for defendant in error.

Before McCORMICK, Circuit Judge, and LOCKE and TOULMIN, District Judges.

LOCKE, District Judge (after stating the facts). There is no doubt about the law, contended for in this case, that, if the servant of the defendant in the court below (plaintiff in error) committed an assault while acting within the scope of his employment, the company is liable, but, if not so acting, it is not. Railroad Co. v. Hanning, 15 Wall. 649; Railroad Co. v. Derby, 14 How. 468. The difficulty is in making application of such principle to the facts as proven, and the only question for our examination is whether such facts raised a question as to whether or not he was so acting sufficient to submit to the jury. Where there is such question, it is one of fact, and should be so submitted (Redding v. Railroad Co., 3 S. C. 1); but here the trial court did not consider the testimony justified such submission. The position of the conductor made it his duty to collect the fare from those he found on the train without tickets, passes, or recognized right to ride, and in doing this, or attempting to do this, or in meeting any exigency or emergency naturally and necessarily growing out of this duty, his conduct, or the course he pursued in performing it, would be within the scope of his employment. The testimony here shows that he approached Williams for his fare, but was informed that he was being passed by the road master, but, upon being told by that party that he had not given Williams permission to ride, he went back to Williams, and again demanded his fare, and, in doing this, he admits that he may have used strong language, may have sworn, and said that he was a "damned lie." How far this was proven by the testimony of the plaintiff, which was before the court, the record does not disclose, and we can only determine what preceded the assault by the admission of Nicely himself. He was at that time acting within the scope of his employment, and when his abuse was answered by something which implied the same insult he had been heaping upon Williams, and which had naturally been drawn out by his own language and conduct, we do not consider that it can be properly claimed that he immediately abandoned his employment as conductor, and commenced an attack solely in his personal capacity. If, as is claimed, he was resenting a fancied insult as a man, it plainly appears from his own testimony that it was one which he had provoked as conductor, and we consider that such character should reasonably be held to cover the whole transaction, and that the entire evidence, when properly considered, cannot reasonably raise a question whether he was not acting beyond the scope of his employment, which should have been submitted to the jury. In

instructing the jury that, if they found that the conductor alarmed the plaintiff to such an extent that he jumped off the car, they should find for the plaintiff, although the allegations of the petition were that he was knocked and kicked from the train, we consider that the judge charged upon the evidence before him, and that the variance between allegata and probata was immaterial. It was not such as could mislead or surprise the adverse party. McClelland v. Smith, 3 Tex. 210; May v. Pollard, 28 Tex. 677; and Wiebusch v. Taylor, 64 Tex. 53. Forcing the plaintiff off the train in a wrongful manner was the gravamen of the complaint, and, whether it were done with the hand, the foot, or threats of bodily injury, the effect was the same. The judgment of the circuit court is therefore affirmed, with costs.