## RAILROAD COMPANY *v.* HANNING.

1. This court cannot decide that a charge is wrong which submits it to the jury to say whether a wharf was a public place upon which all persons were accustomed to come and go at pleasure, and were by law permitted so to do, when the record does not contain the evidence upon which the question arose. The court cannot assume that the charge was erroneous.

2. The general rule is that when an injury has been sustained by the negligent manner in which a wharf or other work is constructed or protected, the principal is liable for the acts and negligence of the agent in the course of the employment, although he did not authorize or know of the acts complained of. When the actor ceases to be a servant or agent and is, himself, the master, he alone is responsible.

3. When a contractor agrees with a railroad company to furnish the materials and labor for building a wharf, to put in posts, piles, &c., as the company should require, making an old wharf as good as new, and a new one in the most workmanlike manner; to submit to the supervisor and direction of the company's engineer, and to do the work to his satisfaction: *held,* that the company had the general and special control of the work, and that the contractor was their agent; and that the company was responsible for an injury occurring through the negligence of the contractor or of those in his employment.

4. An act of the General Assembly of the State of Louisiana, referring to a certain railroad corporation, enacted that the said corporation should

not be liable for debts incurred by those who should contract with it for building its road, &c., "nor shall said company be liable for any injury to person or property caused by the act or omission of the persons so contracting with it." *Held*, that this was a convenient form of declaring the common-law rights of the company, and conferred no exemption on it.

5. Until notice has been given of the changed character of the place, one passing over a wharf or platform over which the public has been accustomed to pass, cannot be made a trespasser for so passing; although the wharf or platform is now no longer used for the purpose of passage.

ERROR to the Circuit Court for the District of Louisiana; the case being this:

The New Orleans, Mobile, and Chattanooga Railroad Company—the station-house grounds of whose road in New Orleans came down in one part of the city to the *batture* of the Mississippi—obtained conveyances of the batture property in front, the same being accurately described by maps annexed to them, and were desirous of building in front of their *batture* a wharf on the river, and also of repairing an old wharf there.

With a view of enabling them to do this, the General Assembly of Louisiana, by a joint resolution passed March 6th, 1869, gave the company—

"The right to inclose and occupy for its purposes and uses, and in such manner as the directors of the said company may determine, that portion of the levee, batture, and wharf, in the city of New Orleans, between and from [certain streets described] to the lower line of the batture, rights owned by said company."

And the joint resolution provided that—

"No steamship or other vessel shall occupy or lie at said wharf, or receive or discharge cargo thereat, except by and with the consent of the said company."

On the 21st of January, 1870, the General Assembly also passed an act,* relating to the company, whose second section was in these words:

---

* No. 31, Sessions Acts, p. 35.

"The said corporation, its officers, or employés, shall not in any case be liable for any debts contracted or liabilities incurred by any person or persons who shall have contracted, or who shall contract with it, to *construct any portion of its road, buildings*, or *appurtenances*, or its *rolling stock*, or to *furnish any materials or labor to be used for such construction*, or *for its maintenance or operation.*

" *Nor shall said company, its officers, or employés, be liable for any injury to person or property, or loss of life, which shall be caused by any act or omission of any person or persons* so *contracting with it, or any of his or their employés or agents.*"

In this state of things, on the 28th of November, 1870, the railroad company, through its division engineer, G. W. Bayley, made an agreement with one Michael Carvin, thus:

"Michael Carvin agrees to furnish the timber, planking, and iron work, and all the labor necessary for the rebuilding of the company's wharf in front of their depot grounds, . . . with such mooring-posts, cluster-piles for fenders every twenty feet, rows of piles on boundary lines, above and below, slips or inclines, as the company, through their engineer, may require, for the sum of $40 per square of one hundred square feet, it being understood that only the best quality of twelve-inch square yellow pine timber shall be used for piles, caps, stringers, fenders, and blocking, and the best of three-inch yellow pine planks for covering or flooring, such of the old piles as are sound and good to be sawed off and blocks placed thereon, but new caps, stringers, and planking to be used throughout. The old wharf to be made as good as new, and the new wharf in the best workmanlike manner; two hundred feet of wharf, from the lower line, to be completed in two weeks, and the whole within one month from this date.

"It is also understood and agreed that the said G. W. Bayley, division engineer of the company, shall supervise and direct the work hereby agreed to be done, and that the said work shall be done to his satisfaction.

"Payment to be made in currency, on the 10th of January, 1871, the company's regular pay-day, at the rate of $40 per square for completed wharf, as above specified, on the approval of the estimate or bill for same by said G. W. Bayley, division engineer."

During the progress of the work thus provided for, one Hanning, while walking, as he alleged, across the wharf and using all proper precautions, was precipitated down an embankment the distance of ten feet and received serious injury; the injury, as he further alleged, being wholly caused by the company's negligently removing the planks on the wharf and negligently laying the planking thereon, contrary to its obligations in the matter. He accordingly sued the company, alleging that the wharf was a " public wharf."

The place where the wharf was, it appeared, prior to the passage of the joint resolution of March 6th, 1869, authorizing the railroad company to inclose and occupy it for its own purposes and uses, had, like the banks of all rivers in Louisiana, from an early date, been open to the public for passing along.

The court below, refusing to give instructions requested by the plaintiff of an opposite kind, charged that if the jury should believe from the evidence that the wharf had always been free and open to the public, then that when the legislature gave to the company the right to occupy it, it was the duty of the company to take means to warn the public that the rights of the public had ceased, so that persons might avoid going upon it, and that as the company had neglected to take any precautions in this respect, they were liable for the damage.

It also charged that the company was answerable for the acts of its contractor, under the contract with Carvin.

The jury found $10,000 damages for the plaintiff; and judgment being entered accordingly, the present writ of error was taken.

The record sent here was a meagre one. It did not furnish any evidence of what sort of a wharf, as *ex gr.*, whether public or private, this wharf was, further than as might be inferred from the joint resolution of March 6th, 1869, the conveyances of property adjoining it, and the contract with Carvin. Neither did it appear what brought the plaintiff on the wharf, whether lawful business, idleness, curiosity, or some bad purpose.

*Messrs. J. A. and D. G. Campbell, for the plaintiff in error:*

1. We admit that a servitude of public utility is reserved upon the banks of all of the navigable waters in Louisiana. But in this case this condition of public use ceased with the adoption of the joint resolution of the 6th of March, 1869, and the occupation of the wharf by the railroad company, under their title. This resolution of the legislature discharged the land of the reserved public servitude, and authorized the corporation, as riparian owners, to maintain a wharf in their front for their own uses and purposes, in such manner as the board of directors might determine. The act, therefore, of the defendant, Hanning, in coming upon this property without any business relations with, or invitation, or inducement from the corporation, was a trespass; for we know of no law, custom, or usage which requires a proprietor to maintain fences, sign-boards, inclosures, or sentinels about his property. Addison, in his work on Torts,[*] says:

"If a man's land is not surrounded with an actual inclosure, the law encircles it with an imaginary barrier, which to pass, is to break and enter his close."

A wharfinger, no doubt, is bound to keep his wharf in a proper condition for intercourse which he *invites;* but "a mere passive acquiescence by the owner or occupier, in a certain use of his land by others, involves no liability."[†] The court in its instruction discarded from its consideration any duty on the part of the defendant to inquire into the title to the property, of its condition, or of his own responsibility to mark where he went. The facts visible to him were of themselves sufficient to put him upon his guard. He saw an inclosure of the levee, and a railway passing over a portion of it, and parties engaged in stripping the wharf of its timbers, and things in confusion about him.

[*] Chapter 6, § 1.

[†] Bolch *v.* Smith, 7 Hurlstone & Norman, 736; Sweeny *v.* Railroad Co., 10 Allen, 368.

Common sense would have told him as readily as a signboard, that such places were dangerous and to be avoided.

2. By force of the contract with Carvin the wharf at the time of the accident was in *his* possession. The negligence, if any there was, was his, not that of the company; and the company is not responsible for any negligence by him or by those employed by him. The general principle is now settled, that a person, either natural or artificial, is not liable for the acts or negligence of another, unless the relation of master and servant, or principal and agent, exist between them; that when an injury is done to a person exercising an independent employment, the party employing him is not responsible to the person injured.* Nor will the reservation of the power to supervise or to inspect the work, throw the liability upon the employer. This is the doctrine laid down in the important English cases of *Knight* v. *Fox*,† and *Steel* v. *Southeastern Railroad Company*,‡ and affirmed in our own courts.§

3. The wharf and batture back of it are in front of the depot grounds of the corporation, and are at the termination of the eastern line of the ferry across the Mississippi River, as will appear from acts of the legislature of Louisiana,‖ which the court will judicially notice. The construction of the wharf was a stage in the construction of the road.

Now the statute of January 21st, 1870, expressly defined and limited the liability of the railroad company, and declared that the company should not be liable for any injury to persons which shall be caused by any act or omission of any person contracting with the company to construct any portion of its road, or to furnish any materials or labor to be used for such construction. This comprises exactly such a case as the present, supposing that the injury was caused by Carvin's neglect.

---

* Hilliard *v.* Richardson, 3 Gray, 359; Scammon *v.* City of Chicago, 25 Illinois, 425; Pack *v.* Mayor of New York, 4 Selden, 222.

† 1 English Law and Equity, 477.            ‡ 32 Id. 366.

§ Painter *v.* City of Pittsburg, 46 Pennsylvania State, 220.

‖ Acts of 1870, p. 57; Acts of 1868, p. 31.

We conclude, that the corporation is not liable for an injury to the person of one who, having no business with them, or inducement or invitation to come upon their property, came upon it for an idle promenade, and coming upon it, found it in disorder and insecurity from the acts of a contractor engaged in repairing and reconstructing it, and without any agency on the part of the corporation, fell through the floor.

*Mr. T. J. Durant, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The first objection presented by the defendant below is, that the wharf in question was not a public wharf; that the plaintiff came upon the same without business, invitation, or inducement; that he was a trespasser, and if he suffered injury it was in consequence of his own wrong.

We are not furnished with the evidence necessary for the decision of this question. The record does not state whether this was the wharf of an active steamboat company, where all travellers were permitted and substantially invited to come and go; whether the plaintiff was there upon the special invitation of some one connected with the wharf; whether by public use and general permission he might deem himself invited to be there, or whether he was an idler without pretence of right or business. The judge submitted the question to the jury, whether the wharf, at the time of the accident, was, and for many years had been, a public place, upon which all people were permitted by law to come and go, and did come and go at pleasure. The jury found the affirmative of this proposition. The only evidence set forth on this point contained in the record, is the legislative resolution of March 6th, 1869, certain conveyances of property adjoining the wharf, as described in maps annexed, and the contract of the company with Carvin. The resolution authorizes the defendants to inclose and occupy for its use, certain portions of the levee, batture, and wharf, in the city of New Orleans, and provides that no vessel shall occupy

said wharf except by the permission of the company. The contract with Carvin is important upon another branch of the case, but has no significance upon the question of the manner of occupying the wharf, or to show how or why the plaintiff was on the wharf, at the time he received the injury. So far as it states general rules and propositions, the charge of the judge seems to be correct. Whether it was sound, as applied to the case presented by the evidence, we have not the means of ascertaining. No error appears, and we cannot assume that it is erroneous.

The second objection urged by the defendant below, arises upon the contract with Carvin, already mentioned. It is insisted that the wharf at the time of the accident was in the possession of Carvin; that the negligence, if any, was his, not that of the company; and that the company is not responsible for any negligence by him or those employed by him.

By this contract Carvin agrees: 1, to furnish the materials and the labor necessary for the rebuilding of the wharf in question; 2, to build it with such mooring-posts, cluster-piles for fenders every twenty feet, rows of piles on boundary lines above and below, slips or inclines, as the company, through their engineer, may require, making the old wharf as good as new, and the new in the most workmanlike manner; 3, to complete the whole within a month; 4, to submit to the supervision and direction of the engineer of the company; 5, to do the work to his satisfaction. The company do not yield to Carvin the possession or control of the wharf. They may direct the number of mooring-posts, cluster-piles for fenders, rows of piles, slips, and inclines, paying according to the number of square feet covered. They are at liberty to direct how much material shall be used, and how it shall be laid to make the old wharf as good as new, and to make the new of the best workmanship. They are to supervise the work to be done. They are to direct how it shall be done. This includes the power of controlling and managing the entire performance of the

work, within the general limits mentioned. It includes the possession of the wharf, the direction, management, and control of all the details of the work. It makes Carvin their agent and servant, receiving a larger or smaller compensation, as they may expand or contract his work.

The rule extracted from the cases is this: The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of.* So long as he stands in the relation of principal or master to the wrongdoer, the owner is responsible for his acts. When he ceases to be such and the actor is himself the principal and master, not a servant or agent, he alone is responsible. Difficult questions arise in the application of this rule. Nice shades of distinction exist, and many of the cases are hard to be reconciled. Here the general management and control of the work was reserved to the company. Its extent in many particulars was not prescribed. How and in what manner the wharf was to be built was not pointed out. That, rebuilt, was to be as good as new. The new was to be of the best workmanship. This is quite indefinite and authorizes not only, but requires a great amount of care and direction on the part of the company. The submission of the whole work to the direction of the company's engineer is evidence, although not conclusive, that the company retain the management and control. The reservation of authority is both comprehensive and minute. The company have the general control, and it may prescribe where each pile shall go, where each plank shall be laid, where each stringer shall be put down, where each nail shall be driven. All the details are to be completed under their orders and according to their direction. The contractor undertakes in general terms to do the work well. The company reserve the power not only to direct what shall be done, but how it shall be done. This is an important test of liability.†

*Camp* v. *The Wardens*,‡ was a case arising in Louisiana,

---

* Story on Agency, § 452; 2 Addison on Torts, 343, 2d edition.
† Kelly v. Mayor, 11 New York, 432.    ‡ 7 Louisiana Annual, 322.

and very much like the present in its facts. The owners were there held liable. All the authorities are cited and commented upon by the court, both of the common and the civil law. The civil law, it was said, held the same rules on this subject as the common law.*

In *Painter* v. *Mayor*,† Strong, J., holds the defendant not to be liable, and says, " The defendants have no control over the men employed by the contractors or over the contractors themselves. They could not dismiss them or direct the work." The cases are reviewed and the rule laid down as it is herein above stated.

*Knight* v. *Fox*,‡ and *Steel* v. *Southeastern Railroad Co.*,§ are cited by the defendant. The first contains nothing in hostility to the suggestion made. In *Steel* v. *Southeastern Railroad Co.* it was held that the company was not liable for any injury done by the contractor, and the contract contained an authority to the company to superintend and direct the work. The case shows that the act which caused the injury was committed in violation of their orders. They expressly forbade the digging of a certain channel. It was dug in violation of this direction, and for the damage resulting therefrom, the court held them not to be liable. This order to the contrary does not necessarily exempt the principal, but it is a circumstance of weight.‖

It is said that by the act of the General Assembly, passed January 21st, 1870, the liability of this corporation is defined in a number of cases. The second section of the act declares " that the said corporation, its officers, or employés, shall not, in any case, be liable for any debts contracted or liabilities incurred by any person or persons who shall have contracted, or who shall contract with it, to *construct any por-*

---

* Pothier on Obligations, § 121, 453; Droit Civil, de Touillier, Book 2, tit. 8, § 284, vol. 2.

† 46 Pennsylvania State, 213.          ‡ 1 English Law and Equity, 477.
§ 32 Id. 366.

‖ Pack *v.* Mayor, 8 New York, 222; see also Storrs *v.* City of Utica, 17 Id. 104; Higgins *v.* The Watervliet Turnpike Co., 46 Id. 23; Robbins *v.* Chicago, 4 Wallace, 679.

*tion of its road, buildings, or appurtenances, or its rolling stock, or to furnish any materials or labor to be used for such construction, or for its maintenance or operation.   Nor shall said company, its officers, or employés, be liable for any injury to person or property, or loss of life, which shall be caused by any act or omission of any person or persons so contracting with it, or any of his or their employés or agents."*

This was doubtless intended as a declaration of the rights of the company convenient to be embodied in its charter, and is in affirmance of the existing law.   It contains two general principles: 1st, that the corporation shall not be liable for the debts to third parties of those contracting to construct its road or to furnish materials therefor.   It would not be upon general principles of law.   The statement, in fact, confers no exemption.   2d, that it shall not be liable for injury to person or property caused by the acts of such contractors or their servants.   In each of these instances the exemption is in the case of contractors, who are themselves the principals, not when they are the agents or servants of the company.   In each case there could be no liability at common law had the statute not been passed.   We think that, upon general principles of law, the company in this case are responsible for the negligence of Carvin, and that this statute does not alter its position.

It would seem that, prior to the passage of the act authorizing the defendants to occupy and possess the wharf, it had been open to the public, free to the passage of all, at their pleasure to come and go.   The judge charged, in substance, that this right of passage to the public continued until some notice should be given to those accustomed to use it that their rights had ended.   This principle is one of quite general application.   A railroad or steamboat company, by the departure and arrival of their conveyances, give an invitation to all who desire to approach their boats or cars to pass over their wharf or platform.   One accustomed so to pass cannot be deemed a trespasser in repeating his act after a new station or landing has been adopted and the cars or boats have ceased to use the old one.   To exclude the

passer's right so as to make him in fault, and to prevent his recovery for an injury sustained by leaving the place in a bad condition, notice must have been given of its changed character, and that the rights of passers are terminated. This principle is so familiar, and exists in so many forms, that it is unnecessary to elaborate it.*

Upon the whole record we are all of the opinion that the judgment should be

AFFIRMED.

---

* 2 Addison on Torts, 141; Corby *v.* Hill, 4 Common Bench, N. S. 556.

