## B. F. REYNOLDS v. WM. BRAITHWAITE.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 31, 1889—Decided January 20, 1890.

1. When one has work done for him under a contract, exercising control of the mode of doing the work, and participating in and approving the acts of the contractor which constitute the cause of action, he is responsible for injuries resulting to another from the unlawful acts of the contractor.

2. In an action for damages for cutting a pipe-line upon the land of defendant supplying water to the plaintiff's premises, it was not error to instruct the jury that the plaintiff was entitled to the reasonable cost of obtaining a supply of water, and to the reasonable cost of the deprivation thereof, from the time it was cut off.

3. Nor was it error to charge that the case was one in which the jury would not necessarily be limited to mere compensation, and that the court could not say it was not a case for punitive damages, but would consider that compensatory damages would be sufficient punishment for the wrong.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 151 October Term 1889, Sup. Ct.; court below, No. 275 October Term 1889, C. P. No 2.

On September 3, 1888, a summons in trespass was served in an action by B. F. Reynolds against Wm. Braithwaite and Sarah Braithwaite, his wife. Issue.

At the close of the testimony, at the trial on May 22, 1889, the court, EWING P. J., charged the jury:

Counsel for defendant have asked us to instruct you on a large number of points, the first being that under all the evidence your verdict must be for defendants; on the contrary we instruct you, that under the uncontradicted testimony in the case, the verdict should be for the plaintiff as against William Braithwaite.

The second point is affirmed and the others are refused, and we say in answer to them, further, that the deed of June 15, 1875, by which Jonathan Hulton conveyed the right to Mr.

Reynolds to use water from his spring, with the right of way over or under his grounds to the land of Reynolds, followed by the laying of the pipe immediately thereafter, is a continuous right. Mrs. Braithwaite is but the devisee of Jonathan Hulton, and she and her husband, acting for her, as the owners and occupiers of the land, have no other or greater rights in the land than Jonathan Hulton would have if he were living. The laying and existence of the pipe was notice to them of the right of the plaintiff, had they needed such notice. Mr. Braithwaite admits that he knew of the pipe and its use. [He, Braithwaite, contracted for the grading of the lot over this pipe so laid. He knew of the cutting of the pipe by his employees, and by his own admission on the witness stand he adopted their act, by stopping up the pipe and forbidding the plaintiff from entering on the land to repair or re-lay the pipe.] [9] . . . . .

In 1875, Jonathan Hulton was the owner of a number of acres of land in what was then Plum township, afterwards in the borough of Verona, and still later in what is now the borough of Oakmont. On that land was a large, fine spring of soft water; if the evidence is to be believed, apparently water enough to supply a number of families and to fill several pipes that were put into it. Mr. Reynolds was the owner of an acre or more of land there that he had bought previously from Mr. Hulton, and on June 15, 1875, Jonathan Hulton conveyed to Mr. Reynolds a perpetual supply or the amount of water that would run through a pipe three quarters of an inch in diameter, from the spring near the westerly line of said Hulton's land, the same from which he now supplies his own residence at Hulton station; also the right of way to lay a pipe through the ground of said Hulton, the right and privilege to keep the . same below the ground perpetually, and the right to remove or repair the same when he so desired. The uncontradicted testimony is, that almost immediately thereafter, the pipe now in question was laid from the spring to Mr. Reynolds's property, where it seems to have supplied two houses; and it would appear indirectly that there has been an ample supply of water for all other houses that had a right to be supplied, and that there was no failure in the spring. The deed did not designate the place in which the pipe was to be laid over Hulton's property, but the laying of the pipe thereafter by mutual con-

sent fixed that place, and neither of them could thereafter change the location of it except by mutual consent. The right of way over the land that was indefinite as to location, became definite and fixed by the laying of the pipe and continues. It was laid under ground, and ordinarily it would require to remain at about the same place in which it was first laid. . . . .

That being the state of the case, in the relations between Mr. Hulton and Mr. Reynolds, Mr. Hulton died in the following year, leaving a will by which he devised, among other things, to his granddaughter, Mrs. Braithwaite, an interest in his land, and in the partition this portion over which this complaint is made was allotted to her. Now, she is not a purchaser without notice of this right of way. [Mr. Reynolds did not put his deed upon record at as early a date as it should have been done, but as to these parties it is not necessary, because they stand just in the position of Mr. Hulton. They are devisees; they are not purchasers, and even a purchaser would have been held subject to the notice which the things on the ground would show. In addition to that, Mr. Braithwaite admits that he knew all about the pipe for years; and in May of last year, he, apparently acting for his wife (he is not the owner but seems to have assumed the rights of an owner there), made a contract for the grading of the grounds of Mrs. Braithwaite, including the ground over which this pipe was laid, or a portion of it, and in the grading the workmen or contractor dug and cut this pipe. It appears that Mr. Braithwaite pointed it out to the contractor, and told him to be careful not to cut it, and yet he did cut it; and the contractor on the stand very coolly says that he did not repair it or do anything with it, although he knew what it was, and knew it was property belonging to Mr. Reynolds; he destroyed it and did not deem it necessary to repair it because that was not in his contract. It is a pity he was not the defendant in this case. I think the jury would likely give him an example in exemplary damages, if he were, but he is not, and it is claimed by the defendant that he is relieved because this was the work of a contractor. Well, if he, Braithwaite, had repudiated that work, possibly he might have claimed that it was a wilful trespass of the contractor, and that he is not responsible; although my impressions are that it is not the kind of a

case where he could repudiate; but he did not, and by the testimony of other witnesses and by his own admissions he adopted that act and took no measures to remedy it; his own workmen had cut this pipe, his employees by the contractor; but he goes to work and stops it up and then forbids the owner of the pipe (who had a right to enter there to repair it) from entering. Taking his own statement, throwing out Mr. Reynolds's statement,—his own statement is, that he said he would not allow it and so accepts the action of his own agent, and he is responsible for it.] [10] . . . . .

[The question of dispute that the court cannot pass upon is one of damages, as to amount. The plaintiff is to be made whole. He is entitled to go on to the premises to repair his pipe. He will have to find where it was cut and destroyed, and is entitled to have that expense made good to him. It is not very likely that the pipe will all have to be re-laid. It seems there was about 700 feet altogether, and about 150 feet through the premises of the defendant. How much of it will have to be taken up it is pretty difficult to tell; but it is cut and will have to be re-laid and some new pipe put in, and the expense of re-laying probably through the property of Mrs. Braithwaite, with joints at each end, is likely to be necessary to repair that damage. Then, there is the damage from the deprivation of water from his house for the time that elapsed. The taking of the pipe, the cutting off the supply, and the refusal to allow it to be repaired is a continuous damage. Now he is entitled to the cost that it has been to him to supply the water and the cost of the deprivation. You have had a statement as to some expense he has been at; whether that is all that is to be allowed is a matter for the jury. Some of it will be of permanent advantage after he gets his supply, but he is entitled to the reasonable cost of supplying water and for the reasonable cost of the deprivation of water from his house from the time the water was cut off.] [11] There is no complaint that there is any scarcity of water, and the amount coming through the pipes would no doubt be a great deal more than was necessary to supply the houses.

[The case is one in which the jury would not be necessarily limited to mere compensation. There are cases of wrong where the jury may go beyond mere compensation, and give what are

called exemplary damages to punish a party for gross wrong-doing, for reckless disregard of right; but the chances are in this case that when you get actual compensation for the damage, that will be punishment enough. The court cannot say absolutely that it is a case not for punitive damages, but would simply say that we would, if on the jury, consider that compensatory damages would be sufficient punishment for the wrong.] [12]

The jury returned a verdict in favor of the plaintiff for $225. A rule for a new trial having been discharged, judgment was entered against Wm. Braithwaite, when he took this appeal, assigning for error:

9–12. The portions of the charge embraced in [ ] [9 to 12]

*Mr. F. S. Bennett* (with him *Mr. F. W. Hughey*), for the appellant.

Counsel cited: Manderbach v. Orphans' Home, 109 Pa. 231; Kieffer v. Imhoff, 26 Pa. 438; Chartiers V. Gas Co. v. Waters, 123 Pa. 220; Chartiers V. Gas Co. v. Lynch, 118 Pa. 362; Bare v. Hoffman, 79 Pa. 71.

*Mr. F. C. Osburn* (with him *Mr. J. C. McCombs*), for the appellee.

Counsel cited: Graver v. Sholl, 42 Pa. 58; Nagle v. Mullison, 34 Pa. 48; Douty v. Bird, 60 Pa. 48; Forsyth v. Palmer, 14 Pa. 97; McKnight v. Ratcliff, 44 Pa. 156; Hart v. Evans, 8 Pa. 13; Seely v. Alden, 61 Pa. 302.

OPINION, MR. JUSTICE McCOLLUM:

As the specifications of error from one to eight inclusive, are not in compliance with the Rule of Court, they will not be considered. The remaining specifications raise but two questions. The first of these relates to the responsibility of William Braithwaite for the acts complained of, and the second to the charge of the court on the subject of damages.

The appellant contends that the cause of action arose from the acts of an independent contractor, who alone is liable for the injury inflicted by them. It is a well-settled general rule that a party who has contracted for the doing of certain work,

for his use and benefit, is not liable for injuries arising in the performance of such work; and this rule rests upon the ground that a contractor, as between him and his employer, is responsible only for the fulfillment of his agreement, and, pending the performance of the work, is, to a certain extent, substituted for the party for whom the work is to be performed. In the application of this rule to the cases, the decisions are apparently conflicting; but it may be regarded as settled that, if the employer keeps control of the mode of the work, his liability for the acts of a contractor and servant is the same.

In the present case, the appellant employed Marion Hazelbaker to do some grading for him on the lot on which he resided, and across which a pipe was laid to conduct water from a certain spring to the dwelling of the appellee. The grade line, fixed by the appellant, was two feet below the pipe, and the grading would necessarily disturb, and probably injure it. The appellant was present most of the time while the work was in progress. In his testimony he says: "When he (Hazelbaker) got down to pretty near the line of the pipes, the level of them, I dug along the line, to show him the line so that he would keep away from them, and he was plowing there, and I told him he was coming too close, but he thought not, and the ground was plowed, and cut the pipe." He claims that he was solicitous that the work should be done without injuring the pipe, and that he frequently spoke to the contractor about it, but he made no provision in his contract for its protection. When it was cut he put a plug in it to prevent the water running upon his land. His conduct immediately thereafter is described in the testimony of Mrs. Reynolds as follows: "I noticed in the kitchen that the water was stopped, and I went up to where the men were working, and told them the water was stopped; and the two men said, 'Yes; we put the pipe to one side;' and I told them to be careful and not get dirt in the pipe, that it might stop it; and just then Mr. Braithwaite came out of the house, and he said, 'Yes; your water is stopped, and is going to be stopped;' and I said, 'Why, we have a right of way through here, and you cannot stop our water; we have a deed, and paid for it;' and he said, 'Well, I wasn't going to have you coming on to my ground, tearing up the ground.' He said the pipe should

not go down on his property again." Subsequently, when the appellee expressed a desire to enter the ground to re-lay the pipe, the appellant declared that he should not do so, and if he attempted to, he would prevent him by force.

The evidence to which reference has been made is undisputed, and shows that the appellant participated in and approved the acts which constitute the cause of action. It shows that he denied the appellee's claim to an easement in the land, and that he welcomed the destruction of the pipe as an aid in defeating that claim. If he did not direct the cutting of the pipe, he was present when it was done, and he promptly adopted the act as his own. He cannot stand upon and derive advantage from it, and escape liability for it. There was no error in holding that upon the uncontradicted evidence in the case the appellant was responsible for the acts complained of, and for the injury caused by them.

We think the appellant has no just cause to complain of what was said by the court on the subject of compensatory and exemplary damages, nor of the verdict of the jury.

The judgment is affirmed.