CASE 33.—ACTION BY JESSIE HOOD AGAINST THE KEN-
TUCKY HEATING COMPANY.—April 16, 1909.

## Ky. Heating Co. v. Hood

Appeal from Jefferson Circuit Court, Common
Pleas Branch, Second Division.

THOS. R. GORDON, Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1. Gas—Injuries to Gas Fixtures and Connections—Elements of
Compensation.—Where the servants of defendant, a gas com-
pany, wrongfully removed and destroyed the fixtures and con-
nections with plaintiff's house of a rival gas company, thereby
depriving plaintiff and her tenants of necessary heat, and
causing the tenants to leave, plaintiff may recover as com-
pensation, not only the cost of replacing the fixtures and con-
nections, but also reasonable compensation for the loss of
profits from her tenants, and for personal inconvenience and
discomfort.

2. Damages—Injurious Results Not Within Contemplation of De-
fendant.—In an action for damages for a wrongful act, it is
not material whether it was in the contemplation of the
wrongdoer that loss of business or-profit would result to the
injured person.

3. Torts—Proximate Cause—Ignorance of Result.—It is no de-
fense to an action for a wrongful act that defendant did not
know that any injury or loss would result.

4. Gas—Injury to Gas Fixtures and Connections—Exemplary
Damages.—Where the servants of defendant, a gas company,
wrongfully removed and destroyed the fixtures and connec-
tions with plaintiff's house of a rival gas company, thereby de-
priving plaintiff and her tenants of necessary heat, and failed
to make repairs when notified of the injury, exemplary dam-
ages were properly allowed plaintiff.

MORTON K. YONTS for appellant.

Appellee's alleged damage arising from loss of room rent too
remote.

Ky. Heating Co. v. Hood.

## AUTHORITIES CITED BY APPELLANT.

Case of Gas Light Company of Baltimore v. Joseph S. Colliday, 25 Maryland, page 1; Sutherland on Damages, Vol. 4, Section 1018; Reynolds v. Braithwaite, 131 Pa., 416; same case Atlan. Rep., page 1110; Miller v. Rambo, 66 N. J., 191; same case 49 Atlan. Rep., page 453; Spencer v. Kilmer, 151 N. Y., page 390; same case 45 N. E. Rep., 865; Graessle v. Carpenter, 30 N. W. Rep., 392; Patterson v. Waldam, 20 Ky. Law Rep., 514; Trustees, &c. v. Kipp, Ky. Law Rep., page 140; Meehan v. Edwards, 92 Ky. Reps., 574; same case 13 Ky. Law Rep., page 803; Denhard v. Hurst, 111 Ky. Reps., 546; same case 23 Ky. Law Rep., 789; Hauser, &c. v. Tate, &c., 20 Ky. Law Rep., 1716; Bluegrass Cordage Company v. Luthy & Co., 98 Ky. Reps., 583; Asher & Hensley v. Stacey, 23 K. L. R., 1586;Hahn v. Hortsman, 12 Bush, 249; Smith v. Western Union Telegraph Co., 7 Ky. L. R., 22; Jaudes, &c. v. Fisher, 5 Ky. L. R., 786; Hay v. Williams, 8 K. L. R., 434; Western Union Telegraph Co. v. Cleaver, 13 K. L. R.; Eppenbauch v. Gooch, 15 K. L. R., 576; Moreline Water Power Co. v. Waters, 10 Ill. App., 159; Koch v. Godshaw, 12 Bush, 318; Freeman v. Chute, 3 Barbee, 424 N. Y.; New York & C. Mining Syndicate Co. v. Frazier, 130 U. S., 611; Goodell v. Bluff City Lumber Co. 57 Ark. 203, S. C. 21, Southwestern 104; Bernstein v. Meech, 130 N. Y., 354, S. C. 29 Northeastern 255; Finck v. Heermans, 5 Lux. Leg. Reg., 125 Pa.; Andrews v. Singer Manfuafacuring Co., 20 Ky. Law Rep., 1089.

EUGENE R. ATTKINSON for appellee.

## MEMORANDUM OF FACTS AND AUTHORITIES.

1. Instruction 1 given by the court was correct. (New Eng. and Amer. Ency. of Law, Vol. 28, p. 551, Sec. 1; Ibed, p. 552b; Ibed, p. 556-3; Ibed, p. 558-2; Johnson v. Park [Ky. 1891], 17 S. W., 273.)

2. Instruction 2 given by the court was correct. (28 New Eng. and Amer. Ency. of Law, p. 604, Sec. 2; sub-sec. b; Ibed, p. 608-c; Ibed, p. 603, title 11; Damron v. Roach, 4 Hump. Tenn, 134; Hawthorn v. Siegel, 88 Calif., 159; 4 Sutherland on Damages, Sec. 1010, p. 2957; Ibed, 1015, p. 2966; Ibed, 1029, p. 3011; Ibed, 1012, p. 2962; Ibed, 1015, p. 2966; Ibed, 1029, p. 3011; Vol. 1, Sutherland on Damages, Sec. 105, p. 304; Sutherland on Damages, Vol. 4, 1028, p. 3009; Hughes v. Austin, 12 Texas, 33 S. W. Rep., 607 Central R. & B. Co. v. Murray, 20 S. E. Rep., 129; Gulf, etc., R. R. Co. v. Smith, 23 S. W., 89; Daniel v. Obert, 20 Ill. App., 557; Dameron v. Roach, 4 Humphrey, Tenn. 134; Mattie R. Willis v. City of Perry, 20th Vol. L. R. A., p. 124; Goldshmids v. Mayor, 14 App. Div. [N. Y. 135]; Hawthorn v. Siegel, 28th, 159.

3. Instructions 3 and 4 were proper and should have been given. (Major v. Pulliam, 3 Dana, 583; Kentucky Midland Ry. Co. v. Stumpp, 12 Ky. L. R., p. 316; Ohio Valley Telephone Co. v. Meyer & Co., 22 Ky. L. R., p. 36.)

4. The verdict of the jury was not excessive and was proper.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

The appellee rented a house on Walnut street, in Louisville, for the purpose of subletting rooms to boarders. The house consisted of a basement and three stories, the third story being an attic containing two small bedrooms. She paid as rent for the property $60 a month; and, when the incident out of which this suit arose occurred, several of the rooms in the house were occupied by persons who had rented them from her. Some of these rented rooms had grates, but they were not used, as the appellee heated the entire house by heating gas furnished by the Louisville Gas Company. In May, 1907, Mrs. McDonald, a subtenant, who occupied, as a restaurant, a part of the basement, desired to use in her place the natural gas furnished by the Kentucky Heating Company, and applied to this company to connect her stove with its gas mains. At this time there was in that part of the basement, under the control of appellee, three gas meters; two that had been installed by the Louisville Gas Company, one for illuminating gas, and the other for heating gas, the third meter belonging to the Kentucky Heating Company. When the employes of the Kentucky Heating Company went to the residence for the purpose of connecting the stove of Mrs. McDonald with the mains of that company, they disconnected the heating pipes of the Louisville Gas Company, cut out and used some sixteen feet of the pipe, took down the meter, and threw it in an ash barrel, thereby cutting off all the heat in the house that was supplied by the Louisville Gas Company. As a result of this all the renters of appellee left, because the weather was too cold to occupy the rooms without heat. At the time the employes cut off the heat, Mrs. Hood was in the house, but they did not notify her what they were going to do, or what they

did, nor did she know anything about it until the renters complained to her of having no heat in their rooms. When she discovered the cause of the trouble, she at once notified the Kentucky Heating Company, and requested it to repair the injury its employes had done, and attempted on several different days to get the company to replace the fixtures, but without success. About a week after the pipes were disconnected the Louisville Gas Company sent its men to the house, and they replaced the fixtures and turned on the heat, charging appellee for this service $6. Whereupon the appellee brought this suit against the Kentucky Heating Company to recover damages for the willful, malicious and wrongful acts of the employes in interfering with the heating fixtures of the Louisville Gas Company, thereby not only depriving her of the heat that company furnished, and subjecting her to inconvenience and discomfort, but causing the renters from whom she had been receiving about $160 a month to leave the premises. Upon a trial, the jury assessed the damages at $500. A reversal is asked upon two grounds: First, because the verdict is excessive second, for error in instructing the jury.

Among the instructions given was the following: "I further instruct you, gentlemen, that if you believe from the evidence that the agents or employes of the Kentucky Heating Company maliciously, or in wanton disregard of plaintiff's rights, disconnected the meter of the Louisville Gas Company, and cut off the supply pipe, whereby she was deprived of the use of the gas, you may or may not in your discretion award her punitive damages, or damages by way of punishment. I further instruct you by 'malicious,' as used in this instruction, is meant the intentional

doing of a wrongful act without legal right." It may be conceded at the outset that unless the appellee was entitled to recover punitive damages, the verdict is excessive. And we are also of the opinion that instruction No. 2 was deficient in failing to specify the character of damages appellee was entitled to recover as compensation. But the error in this instruction was not so prejudicial as to authorize a reversal, especially in view of the fact that the jury were not confined in assessing the damages to compensation.

It is insisted that the appellee was only entitled to recover the amount expended by her in replacing the fixtures taken out by the employes of the appellant company, but in this view we do not agree. The appellee had the unquestioned right to heat her house with gas furnished by the Louisville Gas Company, and to enjoy the profit she might have received from the persons to whom she rented rooms; and it is equally plain that the employes of the appellant had no right or authority to in any manner interfere with or disturb the fixtures by which the heat was obtained. And the evidence conduces to show that at the time the heating fixtures were removed, it was necessary that the rooms of the house should be heated in order to make them comfortable and habitable, and also that the deprivation of the heat caused the renters to leave. As appellant's servants wrongfully deprived appellee of the convenience and comfort of having her house heated, and also by this conduct caused her to lose the income she received from the tenants, she was entitled to recover as compensation, not only the cost of replacing the fixtures, but in addition thereto reasonable compensation for the loss she sustained in being deprived of her tenants, and for personal inconvenience and discomfort. It would

fall far short of the relief to which appellee was en-
titled to limit her recovery to the money she was re-
quired to pay out to have the injury repaired. A
person can not either negligently or wantonly injure
the property of another, thereby causing the other to
suffer loss in business or profits, or in the denial of
the ordinary and reasonable comforts he enjoyed, and
then assert that all the injured party is entitled to
recover is the cost of replacing the injured property.
Waiving, for the moment, the question of exemplary
damages, we may lay it down that, whenever a person
is injured in his person or property by the wrongful
act of another, he is entitled to recover such a sum
as will fairly compensate him, not only for the ac-
tual loss sustained, but for such consequential dam-
ages as may spring from the deprivation of business
or profits as are the direct or proximate result of
the tort complained of, if such consequential dam-
ages are capable of reasonable ascertainment, and
in addition thereto the facts justifying it, compensa-
tion for personal inconvenience and discomfort. In
the case before us the loss sustained by appellee, aside
from personal inconvenience and discomfort, was not
only the sum she paid out for having the fixtures re-
placed, but the loss she suffered in being deprived of
the profit she had the right to expect would be re-
ceived from the renters. This profit was not uncer-
tain or speculative. It was as reasonably sure as any
kind of business profit can be that depends upon the
development of happenings in the future; and, fur-
theremore, it was capable of reasonable ascertain-
ment by a jury. The appellee, when her tenants left
was receiving from them a fixed sum. This income
she lost when they withdrew from her premises, and

the loss of this source of income was the proximate result of the wrongful act complained of.

It is not material whether it was in the contemplation of the wrongdoers that loss of business or profit would result to the injured party. In actions for breach of contracts the rule generally held to is that only such damages can be recovered as are actually sustained, or such as it is reasonable to conclude were within the contemplation of the parties at the time the contract was entered into. 2 Chitty on Contracts, p. 1324. But this measure that obtains in contracts will not be applied in actions sounding in tort. There is a wide difference between the rights and remedies allowable in the one case and in the other. 1 Sutherland on Damages, Sec. 15. It is the wrongful act done, and the consequences that naturally result from it, that the law looks at and holds the wrongdoer responsible for. A person who commits a tort like this is liable for all the damages that naturally flow from, and are the result of, this wrongful act, although he may not at the time have given any thought to or have anticipated that injurious consequences would follow. It is no excuse or defense for the wrongdoer that he did not mean to commit any wrong, or did not know that any injury or loss would ensue. The general rule in respect to the recovery of consequential damages in cases of tort is very well stated in Sutherland on Damages (Vol. 1, Sec. 16): "In an action for a tort, if no improper motive is attributed to the defendant, the injured party is entitled to recover such damages as will compensate him for the injury received so far as it might reasonably have been expected to follow from the circumstances; such as, according to common experience and the usual

course of events, might have been reasonably antici-
pated. The damages are not limited or affected so
far as they are compensatory, or by what was in fact
in contemplation by the party in fault. He who is re-
sponsible for a negligent act must answer 'for all the
injurious results which follow therefrom, by ordinary
natural sequence.' * * * Whether the injurious con-
sequences may have been 'reasonably expected' to
have followed from the commission of the act is not
at all determinative of the liability of the person who
committed the act to respond to the person suffering
therefrom. * * * There need not be in the mind of
the individual whose act or omission has wrought the
injury the least contemplation of the probable conse-
quences of his conduct; he is responsible therefor be-
cause the result proximately follows his wrongful
act or nonaction. All persons are imperatively re-
qired to forsee what will be the natural consequences
of their acts and omissions, according to the usual
course of nature and the general experience." See,
also, note to Wallace v. Pennsylvania R. Co., 195 Pa.
127, 45 Atl. 685, 52 L. R. A. 33; Wyant v. Crouse,
127 Mich. 158, 86 N. W. 527, 53 L. R. A. 626; 13
Cyc. pp. 28, 29, 49; Gregory v. Slaughter, 124 Ky.
345, 99 S. W. 247, 30 R. 500, 8 L. R. A. (N. S.) 1228.

It is further contended by counsel for appellant
that it was error to instruct the jury that they might
assess exemplary or punitive damages. But, consid-
ering the circumstances under which the tort was
committed, we think it was a case in which the jury
might in their discretion allow exemplary damages,
and hence the instruction in this particular was cor-
rect. It is a general rule that exemplary damages
in cases of this character are not allowable unless
the wrong complained of is committed in a malicious,

aggravating, or insulting manner, or with reckless disregard of the rights of the injured person. Major v. Pulliam, 3 Dana, 582; Parker v. Jenkins, 3 Bush, 587; Jennings v. Maddox, 8 B. Mon., 430; Andrews v. Singer Mfg. Co. (Ky.) 48 S. W. 976, 20 R. 1089; Reynolds v. Braithwaite, 131 Pa. 416, 18 Atl. 1110; 4 Sutherland on Damages, Secs. 1031, 1092-5. Measured by this rule, we have little difficulty in reaching the conclusion that the conduct of the servants of appellant in cutting the pipes and throwing the meter in an ash barrel was, to say the least of it, a highhanded, aggravating piece of business, done in utter and reckless disregard of the rights of appellee. The employes of the appellant company do not give any reasonable or satisfactory excuse for their conduct, but they make plain the fact that it was not the result of ignorance or mistake or accident. It was not necessary, in order to connect the mains of the heating company with Mrs. McDonald's stove, that they should either cut the pipes of the Louisville Gas Company or tear down its meter, although they testify that it was more convenient and less expensive to do it in this way than it would have been to make the necessary connections, as might have been done, without disturbing the fixtures of the other company. Looking at the matter from any reasonable standpoint, it is inconceivable why these men should have acted in this manner, unless they did it with the malicious intention of interfering with, and injuring, the property. Nor did appellant company treat appellee in a proper, becoming, or reasonable manner, after she notified it that her fixtures had been disconnected by its reckless, if not malicious, employes. Although appellant was notified of the trouble on the day following the commission of the wrong, it did not re-

pair the injury or make any reasonable effort to do so.

Upon the whole case we see no reason for disturbing the judgment, and it is affirmed.