# CIMORELLI v. NEW YORK CENT. R. CO.

No. 9894.

Circuit Court of Appeals, Sixth Circuit.

April 9, 1945.

Marvin C. Harrison, of Cleveland, Ohio, and Joseph E. Pilmer, of Ashtabula, Ohio, for appellant.

C. M. Horn, of Cleveland, Ohio (C. M. Horn and McKeehan, Merrick, Arter & Stewart, all of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Appellee is a common carrier engaged in the transportation of freight in interstate commerce.

On May 15, 1942, pursuant to Section 22 of the Interstate Commerce Act, 49 U.S.C.A. § 22, the United States entered into a contract with appellee whereby the latter agreed to equip, maintain and operate in its yards at Dock Junction, Pennsylvania, a temporary storage place for war materiel in transit. The materiel was to be unloaded from cars, placed in open air storage and so kept that the contents of each car could be reloaded and moved to points of destination under the original waybill and bill of lading. Appellee was to be paid for its services sums in addition to the ordinary transportation charges and was also to be reimbursed for its cost in preparing, equipping and maintaining the storage yard.

Appellee contracted with the Duffy Construction Company for the unloading and reloading of the cars in a proper and orderly condition and at such places in appellee's yard as were selected by its superintendent.

The Duffy Company was required to furnish its own equipment and labor and it was to perform the work promptly at such times and to such extent as was reasonably required by appellee's superintendent. Any necessary dunnage was to be furnished and unloaded by appellee at the site of the work, and appellee was to put the cars for unloading and reloading at such places in the yard as were reasonably convenient for the Duffy Company. Duffy Company was to receive for its services all of its cost of the work and in addition seven cents per ton, measured by the billed weight unloaded from car to ground or reloaded from ground to car. However, the plus amount in no event was to exceed ten percentum of the cost of performing the work. The allowable cost items were enumerated in the contract and no part of them was payable unless approved as to necessity and amount by appellee's superintendent before being incurred. As a prerequisite to the payment of any of the cost, the Duffy Company was required to keep accurate accounts thereof and to submit copies of these accounts to appellee's superintendent, or his representative at the site of the work and the Duffy Company was required to submit along with the cost account, a written statement of the daily tonnage handled. The purchase of all hand tools, materials and supplies was to be approved in advance by appellee's superintendent and the title to such property vested in appellee, the Duffy Company being responsible to appellee for any loss or damage thereto, excluding ordinary wear and tear. The Duffy Company was required to obtain and carry insurance with insurers approved by appellee covering at the site of the work, workmen's compensation, public liability, property damage, payroll robbery, holdup insurance, fidelity insurance, automobile insurance and contractor's equipment machinery shifting insurance, the premiums for all of such policies being included in the cost of the work. The insurance was to protect all parties in interest.

There was a special provision in the contract that the Duffy Company was to perform the work as an independent contractor with exclusive supervision of the manner and method of its performance except that the work was to be satisfac-

tory to appellee. The contract was terminable by either party upon thirty days' written notice to the other party.

Appellant brought this action against appellee claiming it was liable to him under the Employers' Liability Act, 45 U.S. C.A. §§ 51–60. He stated in his petition that while employed by appellee on July 27, 1942, and due to its negligence, he was severely injured while unloading freight from a box car stationed on appellee's out-door storage track at Powell Avenue, Dock Junction, Erie, Pennsylvania. Appellee answered and denied that appellant was employed by it at the time of his injuries.

In the course of a pre-trial hearing, under the Federal Rules of Civil Procedure, Rule 16, 28 U.S.C.A. following Section 723c, appellee submitted to the trial court the contract it had with the United States and also the contract it had with the Duffy Construction Company and insisted that these documents showed that the Duffy Construction Company was an independent contractor. Appellant admitted that at the time of his injuries he was employed by the Duffy Construction Company. The parties, by stipulation, submitted to the court, as a matter of law, the issue as to whether under the contracts appellant was an employee of appellee at the time of the accident of which he complains, and the court decided that he was not and also decided that the contract between appellee and the Duffy Construction Company was not entered into for the purpose or with the intent of enabling appellee to exempt itself from any liability created by the Federal Employers' Liability Act and that the contract was not a violation of Section 5 of the Act. Appellant's petition was dismissed, hence this appeal.

At the time of the injuries of which appellant complains, he was not an employee of appellee within the meaning of the Federal Employers' Liability Act if the Duffy Construction Company was an independent contractor. The Act in question does not itself define the meaning of the word "employee" or the word "employed." The portion of such Act, 45 U.S.C.A. § 51, pertinent to the question under consideration is as follows:

"Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier."

The words used in this section are to be construed in the natural sense and describe the conventional relationship of employer and employee. Hull v. Philadelphia & Reading R. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670. And so the first question here is whether appellee, for whom the work was being done, had given up its proprietorship of the particular business to the Duffy Construction Company and had thus divested itself of the right of control, to the extent that it had no longer a legal right to terminate the work or to direct it. If appellee had done nothing to limit its rights with regard to the business which was being done for its benefit, but had retained its proprietorship of it, each person working for the Duffy Construction Company was legally subject to appellee's control while so engaged and was the employee of appellee. Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; The Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480.

We are here dealing with a legal problem so difficult that law writers were unclear and perplexed about it long before we came on the scene and no doubt they will so continue after we have gone, but there are extant certain intelligible, if imperfect, legal rules by which there may be an ascertainment of when a person is the employee of another, although his contract of employment is not directly made with such person. Each case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative. One of the tests is who has the right of control over the work being done. Other recognized tests are the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price, the independent nature of the contractor's business, his employment of assistants with the right to supervise their activities, his obligation to furnish necessary tools, supplies and materials, his right to control the progress of the work except as to final results, the time for which the workmen are employed, the method of payment, whether by time or job, and whether the work is part of the regular business of the employer. The important test is the control over the details of the work reserved by the employer and to what extent the person doing the work is in fact independent in its performance. Restatement of the Law of Agency, Vol. 1, p. 483, ch. 7, Sec. 220.

■ Having regard to the foregoing considerations, in simple terms it may be said that an independent contractor is a person employed to perform specific work on condition that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed.

In the case at bar under the primary contract, the shipments were to be consigned in cars to the Freight Agent of appellee at Dock Junction, Erie, Pennsylvania, and the identity of lading of each inbound car was to be preserved while stored and each order for reforwarding of a carload outbound from storage was to give reference to the inbound car, the lading of which the order covered and there was to be no substitution of tonnage. Under the subcontract, the only part of the work delegated to the Duffy Construction Company was to unload and reload the freight. Appellee's superintendent selected the place in the yards where, and fixed the time when, the cars were to be either unloaded or reloaded. He also determined how much equipment had to be furnished by the Duffy Company and the number of persons to be employed in the work.

■ The part of the work to be done by Duffy was in the railroad yards of appellee where there was presumably a frequent movement of cars and appellee controlled the place where the work was to be performed. No part of the premises was surrendered to Duffy. The whole project involved many interdependent details, the control of any one of which could not be surrendered without disorganization of the whole. From the very nature of the work its performance could not be committed exclusively to the discretion of the Duffy Company. The independence of the contract here in question is further negatived by the provisions that appellee's superintendent had to approve in advance every item of cost and necessity of purchase of equipment and also had to approve in advance the salaries and wages to be paid employees. It may be said that these provisions of the contract were necessitated because Duffy Company was to be paid on a cost plus basis, but even so, the provisions gave the contractee such control over the work that the contractor could have no choice as to the manner in which the work was to be done. The fact of actual interference or exercise of control by the employer is not material. If the existence of the right or authority to interfere or control appears, the contractor cannot be independent. Atlantic Transport Co. v. Coney's, 2 Cir., 82 F. 177; Reynolds v. Braithwaite, 131 Pa. 416, 18 A. 1110.

The employment of Duffy Company was general; many or few cars were to be unloaded or reloaded according to the demands of the business. The work was to be done when, where and in the proportions as the needs of appellee might justify. It is therefore manifest that through appellee's superintendent, full control over the means and manner of performance of the contract was reserved to appellee and that there was left in the contractor no independence. Kelly v. Delaware, L. & W. R. Co., 270 Pa. 426, 113 A. 419; Western Express Co. v. Smeltzer, 6 Cir., 88 F.2d 94, 112 A.L.R. 74.

■■ We do not think the provision of the agreement that the Duffy Company was to perform the work as an independent contractor with exclusive supervision of the method and manner of performance is conclusive. "Neither the form of expression on the one hand, nor the name on the other, is conclusive. We must see what rights and privileges were in fact granted, what burdens and obligations assumed." Chicago, R. I. & P. Ry. Co. v. Union Pac. Ry. Co., C.C., 47 F. 15, 22. The spirit and purpose of an agreement, as well as its letter, must be considered in the interpretation and application of a contract. What a contract is styled by the parties does not determine its character or their legal relationship. Union Pacific Ry. Co. v. Chicago &c R. Co., 163 U.S. 564, 582, 16 S.Ct. 1173, 41 L.Ed. 265.

■ Taking into consideration the circumstances surrounding the parties, the subject matter of the contract and the object intended to be accomplished by its performance, and viewing the special provision in the light of its context, we do not believe that it was the purpose of the parties that the work in hand should be performed by the Duffy Construction Company as an independent contractor.

Preliminary to the signing of the primary contract between appellee and the United States, it was represented that the temporary storage yard at Dock Junction was to have a capacity of 1250 carloads, and that appellee was to furnish necessary fire protection facilities, water supply, flood lights, telephones, guard protection and

other apparatus to protect the premises and property in storage against damage or loss and appellee was to move the cars into and out of the yards for unloading and reloading. It would seem from a consideration of all of the elements of the work that appellee could not have discharged its obligations under the primary contract if it had delegated to the Duffy Construction Company the exclusive right to unload or reload the cars without supervision from appellee as to when, where and how the work was to be done.

The case at bar can scarcely be distinguished from the case of New Orleans M. & C. R. Co. v. Hanning, 15 Wall. 649, 82 U.S. 649, 657, 21 L.Ed. 220. There the railroad company contracted with one Carvin to rebuild a wharf in use by the company. Carvin was to furnish the materials and labor necessary to build the wharf with mooring posts cluster-piles for fenders every twenty feet, rows of piles on boundary lines above and below, slips or inclines, as the company, through its engineer might require and to complete the whole in a month. Carvin was to submit to the supervision and direction of the engineer and to do the work to his satisfaction.

During the progress of the work, appellee Hanning, while walking across the wharf, was precipitated down an embankment and received serious injuries which he claimed were wholly caused by the contractor's negligence but he sued the contractee. The court, in applying the rule that the principal is liable for the acts of negligence of the agent in the course of his employment, although he did not authorize or know of the acts of which complaint was made, held the contractee liable. The court said:

"Nice shades of distinction exist, and many of the cases are hard to be reconciled. Here the general management and control of the work was reserved to the company. Its extent in many particulars was not prescribed. How and in what manner the wharf was to be built was not pointed out. * * * That, rebuilt, was to be as good as new. The new was to be of the best workmanship. This is quite indefinite and authorizes not only, but requires a great amount of care and direction on the part of the company. * * * The company reserve the power not only to direct what shall be done, but how it shall be done. This is an important test of liability."

In the case of Chicago, Rock Island & Pacific R. Co. v. Bond, Admr. of Turner, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735, the deceased contracted with the railroad company to shovel coal on a per-ton basis assuming all risk and liability for injury to, or death of, himself or any person employed by him while doing the work. Under the contract the deceased was to remove all coal from cars into coal chutes at Enid, Oklahoma, owned by the company, in such amount and at such times as required by the company. He was also to break the coal to appropriate sizes and to gather up coal that fell from the chute pockets to the ground and place the same on cars or engines as desired by the company. The railroad company was to furnish the necessary tools for the performance of the stipulated services and was to keep a record of all coal delivered and Turner was to be paid upon the basis of the coal handled as determined by daily reports of cars unloaded by him. With his report he was required to furnish a certification from each engine man, hostler or other employee showing the number of tons of coal delivered to any engine. Turner was struck by a train of The Rock Island Railway Company while on his way to or from his place of work and killed. The court decided that under the terms of the contract, the railroad company did not retain the right to direct the manner in which the work should be done as well as the results to be accomplished and that Turner was an independent contractor and that the railroad company was not liable for his death under the Employers' Liability Act.

Appellee urges on us that the cited case is decisive of the case at bar. We do not so view it. There were some provisions of the Turner contract similar to the contract here under consideration but Turner was doing all of the work at the chute with the railroad company placing the cars there to be unloaded and there was no immediate supervision of the details by which he was to do the work and he was not paid on a cost plus basis.

When the primary contract and the subcontract are construed together in the case at bar, the conclusion is inescapable that the Duffy Company would have had to conform the manner of rendering its services

to the necessities of appellee in performing its duties under the primary contract with the United States; otherwise, at times appellee would have had to discontinue the movement of freight into and out of the yards. Such a construction of the contract would be contrary to the intention of the parties. In the Bond case, Turner unloaded the coal at the tipple, a fixed place, where he could perform his services without hindering or interfering with the movement of the railroad company's cars. The cited case is distinguishable from the one at bar on its facts. It may require a nice shade of distinction but such distinction does exist.

In view of the conclusion here reached we find it unnecessary to decide whether the contract of appellee with the Duffy Construction Company was void because of the prohibition of the Employers' Liability Act, 45 U.S.C.A. § 55.

Judgment reversed and cause remanded with directions to set aside the order dismissing appellant's petition and for further proceedings consistent with this opinion.