# Western Union Telegraph Co. v. Guard.

April 16, 1940.

As Extended on Rehearing May 21, 1940.

R. Monroe Fields, Judge.

188

J. J. Moore, Henry J. Scott and Francis R. Stark for appellant.
A. E. Auxier for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal is prosecuted from a judgment for damages in the sum of $500, found by the jury to have resulted from the negligence of the appellant company in failing to deliver an unrepeated interstate telegraphic message.

The appellee, Norman M. Guard, brought this action in the Pike circuit court in May, 1938, to recover damages in the amount of $1,600, representing the salary he would have received as principal of the McVeigh high school, had he not been prevented (as alleged) from securing such position by the negligence of the defendant company, in failing to deliver the telegram sent him on August 20, 1937, directing him to at once wire his application for the position, together with his qualifications, to J. H. Lawrence, a member of the school board.

It appears by the record that Mr. Guard had been, for several years next before the occurrence of the transaction here involved, employed as a teacher in the

college and high schools of Pike county, Ky., but in August, 1937, he was visiting his parents, who lived near the small village of Maine, N. Y., where the appellant receives and delivers telegrams by telephone through its nearby office at Binghampton, N. Y.

On August 17, 1937, Mr. Henderson, who held the position of principal of the McVeigh high school in Pike county, unexpectedly tendered his resignation, which the district school board, at a meeting called and held that night, accepted.

At the same meeting Mr. Lawrence, a member of the board who knew Mr. Guard, recommended him as a good man for the place. The board requested him to get in touch with Mr. Guard and tell him that the position of principal of the high school was open and to ascertain from him if he was in a position to accept it, if the board elected him. Mr. Lawrence in turn asked Mr. Donaldson, who was a friend of Mr. Guard's and who advised that he was then visiting his parents in Maine, N. Y., to wire him this information, which was done through having his daughter, Merl Donaldson, wire him the following morning (August 18), advising him that he was wanted to fill the vacancy in the McVeigh high school and asking him to wire her immediately about the matter. The next day (August 18), Mr. Guard sent Miss Donaldson a reply wire, in effect advising her that he was interested in and would accept the position and requesting further information in regard to it. On the following day (August 20), Miss Donaldson, in response, sent him the following telegram: "Wire J. H. Lawrence McVeigh application and qualifications at once."

It is this wire (which it is admitted was delivered to appellant at its office in Pikeville, for transmission and delivery to Mr. Guard at Maine, N. Y.) which was not, due to the negligence of the company in its handling, delivered to him within a reasonable time, nor did he learn of the contents of the message or of its having been sent him until such information was acquired by private correspondence about the middle of September, when he made inquiry of the telegraph company concerning it. The lost message was then traced and report made on it to him about September 19, some four weeks

after its sending and when the vacancy in the principal's position at the McVeigh high school had been filled by the school board's election of a Mr. Walters, another applicant, for the position.

It is further shown that Mr. Guard, due to his not having received this wire sent him on August 20, on August 23 sent Miss Donaldson another wire, requesting further information regarding the position, and Miss Donaldson in turn, not having had a response to her wire of August 20, on the same day (the 23rd) sent to Mr. Guard another wire, advising him as follows: "Lawrence waiting for application. Have chance if you rush."

Also on August 24, Mr. Guard wired Mr. Taylor, secretary of the McVeigh district school board, informing him that he was interested in the position of principal of the McVeigh high school and would like to be considered as an applicant therefor.

At 10:12 A. M., August 25, he received the following reply telegram from Mr. Taylor: "McVeigh vacancy demands major in history. No record of application or qualifications on file. School opens August 30. Wire if meet above demands." On the same day, Mr. Guard wired Mr. Taylor an answer, reading as follows: "Can satisfy all requirements of State Department of Education for McVeigh vacancy. Answer Western Union." This wire was received by Mr. Taylor at 3:20 P. M., August 25.

It further appears by the testimony of Mr. Taylor that on the evening of August 17, when the board met and accepted the resignation of Mr. Henderson, he, as secretary, was requested by the board to contact "several applications for the position," as the school term was to begin on August 30 and very little time was left in which to choose and elect a principal; that he did so, writing both the State Department of Education to recommend several applicants and also a teachers' agency; that on the morning of August 25 he received by mail from Mr. Walters, who was then residing in Dearborn, Mich., his application for the position and also that afternoon received Mr. Guard's reply wire (as set out above), stating he could satisfy the educational requirements of the position applied for.

Further it appears by the minutes of the meeting of the school board held on August 24 that:

"The board instructed the secretary to wire Mr. Norman M. Guard, Maine, N. Y., to find out his qualifications. They also asked the secretary to wire the State Department of Education and inquire if one of our regular high school teachers can get a permit to act as superintendent this year."

Upon such direction given, the secretary states that he wired Mr. Guard at 9:15 A. M. August 25 as to his qualifications and received his reply that afternoon at 3:20, stating that he could satisfy all requirements.

The proceedings of the board, in respect to its election of a principal for the McVeigh high school at its August 25 meeting, are thus recorded and set out in the minutes of that meeting:

"The Board decided upon Mr. R. A. Walters, Dearborn, Michigan, as first choice for Superintendent, in the event he doesn't accept they decided upon Mr. Norman M. Guard, Maine, N. Y., for superintendent."

Mr. Guard having failed to secure this position and having learned, about the middle of the following September, that there had been a telegram delivered by Miss Donaldson on August 20 to the appellant for transmission and delivery to him at Maine, N. Y., wherein she had directed him to at once make application for the position to the board and give them his qualifications therefor, and that the defendant had negligently failed to transmit and deliver the said message to him, he in May, 1938, after considerable correspondence with the company as to its liability therefor, brought this action against it, seeking recovery of damages on the ground that its negligence, in failing to deliver said message, had resulted in his being deprived of and caused to lose said employment. As the measure of his damages, he set the sum of $1,600, such being the salary for the school year which he would have earned had his employment as principal not been prevented (as alleged by him) by appellant's negligence.

Further he alleged that he had been unable to get other employment, though making repeated efforts to do

so, and that he had expended $3.30 for the telegram sent and prayed judgment for the total amount of $1,603.30.

Appellant filed demurrer to plaintiff's petition and, pending the demurrer, made tender in court of the $3.30 fees expended by plaintiff in sending telegrams, which appellee refused.

Further, pending the demurrer, plaintiff filed amended petition, seeking recovery of the further sum of $500 as punitive damages.

Appellant's demurrer thereto was overruled by the court.

Whereupon appellant tendered to plaintiff in open court the further sum of $5.50, representing the accrued costs to date of tender and also $5 as nominal damages for its failure to deliver the August 20 telegram, which was also refused and deposited with the clerk until final judgment.

Appellant filed answer, traversing the allegations of the petition, and by a second paragraph pleaded that the telegram of August 20, 1937, was delivered to and accepted by it subject to the terms of its standard message contract, providing that:

"The Company (The Western Union Company) will not be liable for damages or penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

Further appellant alleged that Mr. Guard did not file his claim in writing within sixty days after the message was filed with it for transmission and denied liability on account thereof.

Appellant pleaded that the standard form message contract was established and on file with the Federal Communications Commission prior to and was effective as of September 15, 1934, and had been prior to said date duly authorized and approved by the Interstate Commerce Commission, by an order dated May 3, 1921.

By a third paragraph it pleaded further its standard message contract, wherein it is provided that its liability for non-delivery of unrepeated messages should not exceed $500, and that the message so sent to appel-

lant was an unrepeated message and interstate commerce and liability was denied on such account.

A general demurrer was filed to paragraphs 2 and 3 of the answer, which was sustained as to paragraph 2 but overruled as to paragraph 3.

Following pleadings made up the issues.

The case coming on for trial, at the conclusion of the evidence, appellant moved the court for a directed verdict, which was overruled. Thereupon the court instructed the jury in harmony with the pleaded maximum liability ($500) provision of its standard contract for non-delivery of unrepeated messages. Upon submission of the cause to the jury under the court's instruction, it returned a verdict in favor of appellee for $500. Appellant then moved for a judgment in its favor, notwithstanding the verdict, which motion was overruled.

Appellant then filed motion and grounds for a new trial, which were also overruled. Whereupon the court entered judgment for plaintiff in accord with the jury's verdict.

This appeal follows.

Appellant urgently insists that the judgment should be reversed for the following reasons:

(1) That the court erred in overruling its motion for a peremptory instruction.

(2) That as this action was one for special damages, it was necessary to allege and prove that appellant had knowledge that such damage would likely result from its failure to promptly transmit and deliver the telegram in question, and as there was neither allegation nor proof of such knowledge, appellant was entitled to a directed verdict.

(3) That appellee's application for the position having been received in time for consideration by the board and actually considered by it and rejected, appellee has no cause for complaint and for such reason appellant's motion for a directed verdict should have been sustained.

(4) That appellee did not file his claim for damages within sixty days after the message had been filed with the company for transmission, nor within sixty days after he had actual knowledge of same.

(5) That the company's failure to promptly transmit and deliver the telegram of August 20 was not the proximate cause of appellee's failure to obtain the position.

(6) That appellant's motion for a judgment in its favor, notwithstanding the verdict, should have been sustained, because there is no allegation that the appellant knew that special damages would likely result to appellee if the telegram of August 20 was not promptly transmitted and delivered or that the agent who received the telegram of August 20 knew of the existence of the telegram of August 18.

In view of our conclusion reached, that the judgment will have to be reversed upon grounds 3 and 5, we deem it unnecessary to consider the other grounds urged for reversal.

In our consideration of grounds 3 and 5, upon which we conclude the judgment should be reversed, we will discuss and dispose of them together, in that they are so inter-related and connected as in effect to present but the one ground, that the defendant's admitted negligence was not the proximate cause of the school board's failure to elect appellee principal of the McVeigh high school.

The plaintiff has here procured a judgment against appellant for damages, found by the jury to have been suffered by him as the result of appellant's negligence in failing to promptly deliver to him the telegram of August 20, directing him to make application, with statement of his qualifications, for the position sought to the board.

Appellant has denied this allegation of the petition, that its failure to properly deliver this message within a reasonable time was the proximate cause of appellee's failure to secure the position.

Therefore, the decision of this issue thus joined is narrowed down to the one question of whether or not the appellee, by his pleadings and evidence, has maintained the burden resting on him of showing that appellant's negligence, in failing to deliver this advisory message of August 20, was the proximate cause of his loss of the position sought.

It is shown by the evidence that the school board of the McVeigh district did, prior to and at the time of its election of Mr. Walters to succeed Mr. Henderson as principal of the school, have before it both Mr. Walter's and the appellee's application for this position and in addition had appellee's reply telegram sent it on the afternoon of August 25, stating that he had or could satisfy all the requirements of the State Department of Education for the McVeigh vacancy he was asking to be appointed to.

By the minutes of the meeting of the McVeigh district school board, held August 25, which is the official record made by the secretary of its proceedings, it is shown that:

"The Board decided upon Mr. R. A. Walters, Dearborn, Michigan, as first choice for Superintendent, in the event he doesn't accept they decided upon Mr. Norman M. Guard, Maine, New York, for superintendent."

The rule is well-settled that the official record of a meeting of a board imports verity, and that it is conclusive as to the matters set forth therein, except where fraud or mistake is shown.

It is not alleged, nor contended, that there was any fraud or mistake made by the secretary in regard to the minutes of the board's meeting of August 25, as stated supra.

It was the legal duty of the secretary of the board, Mr. Taylor, to be present at this meeting of the board held on August 25 and to record in his record book, provided for such purpose, all its official proceedings.

The secretary's minutes (the official record of the proceedings of the board at this meeting) show the facts stated, which are unassailed either for fraud or mistake. They are the best evidence of the official acts of the board, through which only it speaks, and the only proper evidence thereof.

The conclusive showing of the minutes is that the board, at this August 25 meeting, decided upon Mr. Walters as first choice for the position, and, in the event he did not accept the position, that Mr. Guard was appointed to fill the vacancy—that is to say, he was the

board's second choice for the position—which very clearly and conclusively proves that the applications of both Mr. Walters and Mr. Guard, together with the required statements of their qualifications for the position, were before the board and considered by it. Had it been otherwise, the board would not have been in a position to consider either of them as legally eligible and suitable for the position they sought.

The basis of appellee's tort action is that had the appellant company delivered to him within a reasonable time, as was its duty, Miss Donaldson's message of August 20, he would have, as therein directed, immediately wired his application, with his qualifications, to the board and the same would have been favorably considered by it and he chosen for the position of principal of the high school, but that the appellant, by negligently failing to deliver such message within a reasonable time, prevented his making application as directed, with the result that he was by its negligence in so doing caused to lose the position.

Such, however, is not shown by the record to have been the true situation, as the telegram of August 20, which the company failed to deliver to him, was not one offering him the position or one directing his sending his acceptance of a position offered him, but was merely one advising his taking the directed preliminary steps looking to his securing the position. Inasmuch as appellee contends that he was caused to lose the position he sought through being prevented by the company's negligence from submitting his application and qualifications therefor, by the same token it would follow that if he submitted to the board his application and qualifications for its consideration at its meeting, such act was the sole determining factor in his securing the position. It appearing by the record that he did, in fact, submit to the board, through its secretary, his application and the fact of his possessing the required qualifications for the position before it took action in electing a successor to Mr. Henderson, and that, with such application and information before it, it chose Mr. Walters as principal of the McVeigh high school, it can not be reasonably contended that the failure of the appellant company to make earlier delivery to him of Miss Donaldson's telegraphic message, directing him to wire his application and qualifications to the board, was the proximate cause

of his failure to get the position, where he failed to get it notwithstanding the fact that he did wire his application and qualifications to the board prior to the board meeting at which it chose to elect Mr. Walters as principal of the high school rather than appellee.

The rule is that:

"The recovery of damages in actions against telegraph or telephone companies and the measure and elements of such damages are governed by the well settled general principles applicable in other actions for damages." 26 R. C. L., section 100, page 602. Further the rule is that:

"The measure of liability in tort actions is found by determining the consequences of the defendant's breach of duty. A person injured by the commission of a tort is entitled to actual pecuniary compensation for the injury sustained, and except where the circumstances are such as to warrant the allowance of exemplary damages, he is limited to such compensation. He is not to be placed in a better position than he would have been in had the wrong not been done. Only such damages are recoverable for a tort as can be shown with reasonable certainty and as are the direct, natural, and proximate consequences of the defendant's wrongful act. According to the weight of authority, the rule applicable in actions for breach of contracts is that the damages recoverable are limited to those which may reasonably be supposed to have been within the contemplation of the parties and does not apply in tort actions." 15 Am. Jur., section 65, page 469.

Illustrating this distinction and showing the wider range allowed for recovery of damages in tort actions, based upon negligence, is the further statement of the rule in section 66, page 471 of the same text, which is as follows:

"The damages recoverable in a tort action based upon negligence must be such as are the natural and reasonable consequences or results of the defendant's wrongful act or omission. Even though there may be such causal connection between the defendant's act and the plaintiff's injury as to establish a cause of action in the plaintiff's favor against the

defendant under the proximate cause doctrine, the measure of recovery cannot properly include consequences of that act which cannot be said to be proximate consequences."

To such effect was it stated in the recent case of Western Union Telegraph Co. v. Ramsey, 261 Ky. 657, 88 S. W. (2d) 675, 677, 103 A. L. R. 541, that:

"It may be conceded that a different measure of damages applies. The damages recoverable for breach of contract are such as are actually sustained or such as it is reasonable to conclude were within the contemplation of the parties at the time the contract was entered into. In an action in tort, the damages recoverable are such as actually flow from the wrongful act, although the particular consequences may not have been contemplated when the wrongful act was committed. Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A., N. S., 588, 134 Am. St. Rep. 457."

In the Hood case, supra, the court quotes with approval from Sutherland on Damages, vol. 1, section 16, in part as follows [133 Ky. 383, 118 S. W. 339, 22 L. R. A., N. S., 588, 134 Am. St. Rep. 457]:

"In an action for a tort, if no improper motive is attributed to the defendant, the injured party is entitled to recover such damages as will compensate him for the injury received so far as it might reasonably have been expected to follow from the circumstances. * * * There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or nonaction. All persons are imperatively required to foresee what will be the natural consequences of their acts and omissions, according to the usual course of nature and the general experience."

The only controlling requirement announced in these several statements of the rule is that, to impose liability upon the tort feasor, his or its negligent act or omission must be shown to have been the proximate cause of the injury suffered, or that the injury followed proximately from the wrongful act or nonaction.

Applying this rule, or limitation upon the measure of damages recoverable for the injury suffered, as proximately resulting from the negligent act or omission, clearly the appellee has here failed to meet the burden of proof imposed on him, of showing that his loss of the teaching position in question was proximately caused by the appellant's failure to deliver the telegraphic message sent him on August 20.

Therefore, no actual damage being shown by the evidence to have been sustained by appellee because of the appellant's failure, as was its duty, to deliver him the telegram of August 20, for the reason that the very information it directed him to convey to the board (and which he contends he was prevented from conveying by appellant's nondelivery of the message) was in fact by him conveyed by wire to the school board and considered by it at the meeting at which it elected as successor to the resigning principal of the school not the appellee but another, when having the applications and qualifications of them both before it, it is our conclusion that the trial court erred in authorizing, by its instruction given the jury, the recovery of more than nominal damages, as the evidence failed to show any actual or compensatory damage had been caused the appellee by the company's failure to make proper delivery of the telegram sent him.

The company, however, is shown by the evidence to have failed in its duty (assumed when accepting the telegram from Miss Donaldson for transmission and delivery to the appellee), and for this breach of its duty, contracted and owing the sender of the message, it is liable for nominal damages, which are recoverable, as stated in section 5, page 390, 15 Am. Jur., "where a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where, from the nature of the case, some injury has been done the amount of which the proof fails to show. The law infers some damage from the breach of an agreement or the invasion of a right; and * * * it declares the right by awarding * * * 'nominal damages.' "

The appellee here had such right, which was invaded by the failure of the appellant to deliver the message sent him within a reasonable time. It is well-settled in this jurisdiction that an addressee of a tele-

gram has the right to maintain an action for damages against a telegraph company for its negligent failure to deliver the telegram or to deliver it promptly. Western Union Telegraph Co. v. Ramsey, supra.

For the reasons hereinabove stated, it is our conclusion that the trial court's judgment should be reversed and the cause remanded with the instructions to set aside the same and to enter, in lieu thereof, a judgment for nominal damages and costs up to the time when the tenders were made and refused and deposited with the clerk.