RENDERED: MAY 5, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1065-MR

MYRANDA JUAREZ　　　　　　　　　　　　　　　　APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.　　　　　HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 19-CI-002844


BROOKE SCHILLING;
HEATHER MCGOVERN; AND
JEFFERSONTOWN ELEMENTARY　　　　　　　　　　APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: Myranda Juarez appeals the Jefferson Circuit Court's August 18,

2021 order granting summary judgment to the Appellees, Brooke Schilling and

Heather McGovern.[1]  Having reviewed the record and being otherwise sufficiently

---

[1] Schilling and McGovern work at Jeffersontown Elementary.  Although Juarez named
Jeffersontown Elementary as an appellee in her notice of appeal, it was not named as a party
defendant below.  Moreover, the summary judgment order on appeal lists the only defendants as
"Brooke Schilling and Heather McGovern" and further states that it "is final and appealable as it

advised in the law, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

During the relevant time period, the 2018-19 school year, two of Juarez's four children attended Jeffersontown Elementary School ("JES"). Juarez was very involved at JES; she was a member of the Parent Teacher Association ("PTA") and regularly volunteered at the school helping with events, chaperoning field trips, and assisting teachers with clerical work such as making copies. Juarez regularly brought her youngest child, who was still breastfeeding, to JES when she was visiting or volunteering. According to Juarez, prior to March 15, 2019, she had breastfed her child at JES without incident.

Juarez was asked to assist with JES's spring picture day scheduled for March 15, 2019. On that day, Juarez arrived at the school around 9:30 a.m. with her youngest child in tow. Juarez was assigned to work as a "runner" that morning, with her main duty being to call the various classes to the gymnasium when the photographers were ready for them. She recalls that she carried her youngest child, who was not yet two, on her hip most of the morning.

---

resolves all matters in dispute and there is no good cause for further delay." (Record ("R.") at 431.) Since Jeffersontown Elementary was not named below, it is not a proper party to this appeal, and we will not discuss it separately.

Around lunchtime as the gymnasium was beginning to empty out, Juarez sat down on the floor and began breastfeeding her child. Natasha Kelly's third grade class was in the gymnasium for its picture time along with students from other classes who were also waiting for their pictures. Ms. Kelly estimated that there were possibly up to seventy-five students in the gymnasium when Juarez began breastfeeding. For her part, Juarez recalls that there were only about twenty-five students present. Regardless, Ms. Kelly noticed that some of the students were "commenting and gesturing" about Juarez breastfeeding. Unsure of what to do, Ms. Kelly texted Principal Brooke Schilling informing her of the goings-on in the gymnasium.

Principal Schilling was on her way out of the building when she received Ms. Kelly's text. According to Principal Schilling, after receiving Ms. Kelly's text about Juarez breastfeeding in the gymnasium, she first requested Assistant Principal Jessica Carter to go to the gymnasium and address the issue. However, Ms. Carter was reluctant to do so, and the two decided that it would be better to have Counselor Heather McGovern handle the situation.

Counselor McGovern made her way to the gymnasium where she observed Juarez sitting on the floor breastfeeding her child. Counselor McGovern bent down and introduced herself to Juarez. She then offered that Juarez was free to use her office to breastfeed. Juarez declined Counselor McGovern's offer

because she was almost finished, and the baby was falling asleep. At that point, at least according to Juarez, Counselor McGovern told Juarez that she "couldn't be breastfeeding out in the open." Upset and embarrassed, Juarez decided to leave the school.

Juarez began crying and another parent, Jennie Derosett, offered to walk her to her car. On her way out, Juarez encountered Counselor McGovern in the hallway. According to Juarez, Counselor McGovern asked her why she was crying and upset. Juarez indicated that she did not wish to discuss the matter further at that time and proceeded out of the building and to her car.

On March 26, 2019, Juarez returned to the school for a meeting with Principal Schilling and Assistant Principal Carter. Juarez believed that the purpose of the meeting was for Principal Schilling to apologize for the incident on March 15th. Instead, Principal Schilling reiterated that Juarez was not to breastfeed at JES unless she was in an office with a door.

After the March 26th meeting, Juarez testified that she no longer felt comfortable at JES. She ceased her volunteer activities and recalls that she did not go on a field trip on May 2nd that she had previously signed up to attend. According to Juarez, the incident caused her to suffer a great deal of anxiety and nervousness and resulted in difficulty continuing to breastfeed her child leading her

to stop breastfeeding altogether shortly thereafter. Juarez explained that she did not seek counseling because talking about the incident caused her so much distress.

During her deposition, Juarez acknowledged that she attended a field day at JES around June 5th and a kindergarten graduation/promotion for her son on June 14th. Juarez breastfed her child in the PTA room during the field day. Juarez maintains that attending both events caused her distress due to the directive that she was not to breastfeed in the open.

On May 9, 2019, Juarez filed a complaint in Jefferson Circuit Court against Principal Schilling and Counselor McGovern alleging their actions and directives violated Juarez's rights pursuant to KRS[2] 211.755 and caused her to suffer embarrassment, humiliation, and mental anguish, and to avoid chaperoning a school field trip with one of her older children. (R. at 1-3.) As relief, Juarez demanded:

> 1. Damages for violation of [Juarez's] right to breastfeed pursuant to KRS 211.755,
>
> 2. Damages allowed pursuant to KRS 344 et seq. in that breast feeding is gender specific,
>
> 3. Sensitivity training for all employees of the Jefferson County Public Schools,
>
> 4. A restraining order be issued restraining the Defendants from preventing [Juarez] from breastfeeding in public, pursuant to KRS 211.755,

---

[2] Kentucky Revised Statutes.

-5-

5.  Attorney fees as allowed by law,

6.  Her costs herein expended,

7.  Any and all other relief to which [Juarez] may be entitled.

(R. at 3.)[3]

Appellees filed an answer, and the circuit court entered a pretrial schedule.  A jury trial was scheduled for September 27, 2021.  On March 18, 2021, Principal Schilling and Counselor McGovern moved the circuit court for summary judgment on the basis that Juarez had neither pled nor suffered any actual injury as a result of the alleged event.  They further asserted that KRS 211.755 did not create a private right of action and that Juarez had failed to establish that interfering with breastfeeding (outside of the workplace) was a form of sex discrimination cognizable under the Kentucky Civil Rights Act.  Lastly, they argued that they were immune from suit because their conduct was discretionary in nature.

Prior to a ruling on Appellees' pending summary judgment motion, the circuit court granted Juarez's motion to file an amended complaint.  (R. at 297.)  As amended, Juarez's complaint additionally alleged a count of negligence *per se* based on Appellees' alleged violations of KRS 211.755, Kentucky's breastfeeding

---

[3]  At the time of the incident, neither JES nor the Jefferson County Board of Education ("JCBE") had a policy in place governing breastfeeding.  Sometime after Juarez filed her complaint, JCBE established a policy that conforms to KRS 211.755 and provided training related thereto.  This action essentially mooted Juarez's injunctive-relief claims.

statute; and sought punitive damages on the basis that Appellees' knowing disregard of KRS 211.755 was willful and wanton. (R. at 284-85.)

By order entered August 18, 2021, the circuit court granted summary judgment to Appellees. (R. at 414-20.) Regarding whether Juarez suffered an actual injury, the circuit court concluded as follows:

> As a school volunteer, Juarez was authorized to be at the school and presumptively to be in the cafeteria.[4] She stated in her deposition that she was bothered by [Counselor McGovern's] statements to her – more by [Counselor] McGovern's tone than by her substance. One can reasonably infer that Juarez did feel some emotional distress by being asked to move. [Counselor] McGovern testified in her deposition at page 9 that Juarez "had done nothing wrong, that I was not asking her to leave, and I was not asking her to stop." She was merely suggesting that Juarez use a private room, which in a school building full of rooms, was arguably not unreasonable. [Counselor] McGovern was adamant she did not interrupt the breastfeeding. ([Counselor] McGovern depo, p. 13). Juarez herself testified that she was almost finished. [Counselor] McGovern did not cause the breastfeeding process to be stopped and started. There is no evidence that anyone at the school interfered with the breastfeeding. The school merely offered an alternative location for breastfeeding. This, as a matter of law, is not an actionable injury. As a point of contrast, had [Counselor] McGovern ordered Juarez to immediately cease breastfeeding, to promptly get off the grounds, to "be ashamed of herself," or interjected any of a myriad of comparable condemning conduct, some injury necessarily would have to be implied or the statute

---

[4] The circuit court repeatedly referred to Juarez being in the "cafeteria" during the incident in question. However, it is undisputed that Juarez was in the gymnasium during the relevant time period. This oversight, however, is not material.

would be toothless. But the conduct alleged here simply doesn't rise to the level of having caused a compensable injury.

(R. at 416-17.)

Regarding Juarez's sex discrimination claim under KRS Chapter 344, the circuit court concluded that the Kentucky Civil Rights Act does not apply because "KRS 344.030-344.110 is confined to discrimination in workplace environment" and Juarez was not employed by the school. (R. at 417-18.)

Lastly, the circuit court concluded that Principal Schilling and Counselor McGovern are protected by qualified governmental immunity because they were exercising their discretionary functions in good faith. (R. at 419.)

In conclusion, the circuit court reiterated that:

[M]erely offering a nursing mother a private room in which to nurse her baby out of the view of grade-school children is not an interference with breastfeeding as forbidden by KRS 211.755. If anything, it is in furtherance of the policy behind the statute. Nursing in a private room would potentially prevent interfering with breastfeeding. Offering (while not requiring) a quieter place to nourish one's child is not an interference but rather an accommodation. This is an important distinction.

(R. at 420.)

This appeal by Juarez followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[5] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

---

[5] Kentucky Rules of Civil Procedure.

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). "[T]he standard of review for an appellate court is de novo because only legal issues are involved." *Martin v. Wallace*, 651 S.W.3d 753, 756 (Ky. 2022) (citing *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020)).

### III. ANALYSIS

### A. The Kentucky Civil Rights Act

Juarez asserts that the circuit court erred in dismissing her Kentucky Civil Rights Act claim because Appellees' directives for her not to breastfeed in the school gymnasium constitute discrimination on the basis of her "familial status" and/or "sex." While Appellees have asserted qualified governmental immunity from suit, the doctrine of sovereign immunity does not prevent suits against the Commonwealth or its agencies based on the Kentucky Civil Rights Act. *Ammerman v. Board of Educ., of Nicholas County*, 30 S.W.3d 793, 797 (Ky. 2000).

The General Assembly has defined the terms "because of sex" and "on the basis of sex" to include discrimination "on the basis of pregnancy, childbirth, or related medical conditions, and women affected by pregnancy,

-10-

childbirth, or related medical conditions[.]" KRS 344.030(8)(a). However, when the General Assembly amended the statutory definition to encompass pregnancy and childbirth-related conditions it implicitly indicated that such discrimination is protected against only in employment. *Id.* ("[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for *all employment-related purposes*, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.") (emphasis added).

Therefore, even though Juarez is correct that KRS 344.145[6] makes it unlawful "to deny an individual, because of sex, the full and equal enjoyment of

---

[6] We note that it is questionable whether Juarez properly alleged a Kentucky Civil Rights claim based on KRS 344.145. During the proceedings below, she cited to KRS 344.040, which relates to employment-related discrimination; Juarez first mentioned KRS 344.145 during the appeal of this matter. To wit, in her response to Appellees' motion for summary judgment, Juarez argued:

> By August 1, 2019, the Jefferson County Public Schools finally recognized breast-feeding to be allowed pursuant to the amending of KRS 344.040. Dr. Polio put in a new policy recognizing that pregnant and breastfeeding employees were allowed protection. This begs the question as to non-employees being also covered by KRS 340.040 since the change in law applied to employees. KRS 344.000 [*sic*] et seq. is the mirror image of violations of the Civil Rights Act of 1964 especially Title VII.

(R. at 277.)

It has long been this Court's view that specific grounds not raised before the trial court but raised for the first time on appeal will not support a favorable ruling on appeal. Most simply put, "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999). It is only out of an abundance of caution that

the goods, services, facilities, privileges, advantages, and accommodations of . . .

any facility supported directly or indirectly by government funds[,]" the expanded

definition of "because of sex" has not been defined by the General Assembly to

apply outside of the employment context. KRS 344.030(8)(a).

For purposes of the Kentucky Civil Rights Act, "[e]mployee means an

individual employed by an employer, but does not include an individual employed

by his parents, spouse, or child, or an individual employed to render services as a

domestic in the home of the employer." KRS 344.030(5)(a) (internal quotation

marks omitted). The question thus is whether Juarez, an unpaid parent volunteer,

can in any sense be considered an employee of JES for purposes of the Act.

Because the Kentucky Civil Rights Act is modeled after federal law,

we may seek recourse to the federal courts' construction of the term "employee"

under similar circumstances. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589 (Ky.

2003); *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 820 (Ky. 1992).

The specific provisions of the federal legislation also fail to offer a clear meaning

since Title VII, for the most part, defines employee as "an individual employed by

an employer" and, like Kentucky's Act, does not specifically address whether

---

we review Juarez's argument based on the public accommodation section of the Kentucky Civil
Rights Act.

-12-

volunteers are excluded as employees entitled to protection.  42 U.S.C.[7] § 2000e(f).

However, numerous federal courts have repeatedly held that unpaid volunteers,

like Juarez, who do not receive any direct benefit for their labor are not employees

within the meaning of the federal Civil Rights Act.  *See Sacchi v. IHC Health*

*Services, Inc.*, 918 F.3d 1155, 1158 (10th Cir. 2019); *Marie v. American Red*

*Cross*, 771 F.3d 344, 354 (6th Cir. 2014); *York v. Association of Bar of City of New*

*York*, 286 F.3d 122, 126 (2d Cir. 2002).

We see no reason to depart from the reasoning expressed by the

numerous federal courts that have considered the issue.  Juarez's act of

volunteering at JES is admirable, but it did not convert her into an employee

entitled to protection under the Kentucky Civil Rights Act.[8]  Accordingly, we

affirm the circuit court's order granting summary judgment to Appellees on

---

[7]  United States Code.

[8]  We further note to the extent that any claim could lie under the Kentucky Civil Rights Act, the Act does not allow suit to be filed against individuals.  Rather, the proper defendant in such cases is the employer. *Effinger v. Philip Morris, Inc.*, 984 F. Supp. 1043, 1046 (W.D. Ky. 1997) ("The court finds that under the Kentucky Civil Rights Act, discriminatory actions by individuals acting in their official capacities as agents of their employer do not create individual liability."); *Palmer v. International Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 882 S.W.2d 117, 120 (Ky. 1994).  Therefore, even if the alleged claim was legally viable, it could not lie against Principal Schilling and Counselor McGovern, the only parties named below.  This in and of itself provides an alternative basis to affirm the circuit court's summary judgment decision. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

Juarez's claim that Appellees unlawfully discriminated against her in violation of the Kentucky Civil Rights Act.

## B.  Kentucky's Breastfeeding Statute

Effective July 12, 2006, KRS 211.755 protects a mother's right to breastfeed her child in the Commonwealth of Kentucky.  It provides:

> (1) Notwithstanding any other provision of the law, a mother may breast-feed her baby or express breast milk in any location, public or private, where the mother is otherwise authorized to be.  Breast-feeding a child or expressing breast milk as part of breast-feeding shall not be considered an act of public indecency and shall not be considered indecent exposure, sexual conduct, lewd touching, or obscenity.
>
> (2) A municipality may not enact an ordinance that prohibits or restricts a mother breast-feeding a child or expressing breast milk in a public or private location where the mother and child are otherwise authorized to be.  In a municipal ordinance, indecent exposure, sexual conduct, lewd touching, obscenity, and similar terms do not include the act of a mother breast-feeding a child in a public or private location where the mother and child are otherwise authorized to be.
>
> (3) No person shall interfere with a mother breast-feeding her child in any location, public or private, where the mother is otherwise authorized to be.

KRS 211.755.

Whether Appellees "interfered" with Juarez as she was breastfeeding her baby in the school gymnasium or merely offered her an alternative, more private location to breastfeed is central to both immunity and Juarez's claims under

KRS 211.755 and KRS 446.070.[9]  Thus, our first task is to determine whether the circuit court correctly concluded Counselor McGovern only offered Juarez an alternative location to breastfeed her child and did not direct her to stop breastfeeding the child in the gymnasium.

The circuit court concluded that there was no interference because Counselor McGovern did not tell Juarez that she could not continue breastfeeding her baby but merely offered her an alternative location within the school where she could breastfeed in private.  (R. at 417.)  While it is true that Counselor McGovern testified to this version of events in her deposition, this is not what Juarez recalled.

Juarez was deposed on July 22, 2020.  Upon direct questioning by defense counsel, she testified that Counselor McGovern explicitly told her she could not continue breastfeeding her baby in the gymnasium and that she could do so only in a private room away from students.[10]

> I noticed a pair of legs standing very close to me [as I was sitting on the gymnasium floor breastfeeding], and I attempted to kind of shift my weight over to move thinking maybe someone needed past me, or I was in the way of something.  I was underneath a billboard.  I thought that they may have been trying to read or something.

---

[9]  KRS 446.070 creates a private, civil cause of action for the violation of any statute:  "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

[10]  A copy of Juarez's deposition was submitted in full to the circuit court as part of the summary judgment proceedings.  (R. at 52-138.)

I finished my phone call, and as soon as I finished my phone call, [Counselor] McGovern knelt down beside of me and held out her hand, shook my hand, and introduced herself as the school counselor.

At the time, I was thinking maybe one of my children were [*sic*] upset or something had happened with them, because the counselor was approaching me, and she offered her office space for me to nurse my daughter in. I responded to her letting her know that I was appreciative of the offer; however, I was almost finished, and she was going to sleep, so I didn't need to take her up on that but thanked her anyway.

And that's when she said, no, I don't think you understand. There is a chance you could be making some of the children uncomfortable, and *if you are going to be breastfeeding here, you need to be in my office behind a closed door going forward*.

And at that point, I was upset, humiliated, disgusted at what I was hearing. No one had ever approached me like before, and I let her know that; that no one has ever had an issue with me nursing in the school before, and I've nursed her there several times over, and she – I told her that I was going – made the decision to leave. She said that I didn't have to do that, but I needed to be behind a closed door, an office, and I said if that's my only choice, then I need to leave, and she said she felt sorry that I felt that way and dismissed herself.

(R. at 77-78) (emphasis added).

Juarez elaborated in her responses to defense counsel's follow-up questions.

Q: Did you see [Counselor] McGovern approach you at all?

-16-

A:  I didn't see her until I saw her legs in front of me, and I had no idea who that was.

Q:  Okay.  About how long were you feeding your daughter before she came over – [Counselor] McGovern came over?

A:  Maybe 25 minutes.

Q:  And were you actively feeding when she came over?

A:  Yes.

*Q:  Did [Counselor McGovern] order you to stop feeding [the baby]?*

*A:  Yes.  She wanted me to go into her office behind a closed door if I intended to finish feeding her*.

Q:  Did she explain to you that she was offering another space for you to feed your daughter?

*A:  That's the way it was presented initially, <u>and when I declined that offer was when I was told I needed to be in another room</u>*.

. . .

Q:  Did she tell you that you had to leave the school if you were going to breastfeed?

A:  She told me that I couldn't be breastfeeding out in the open.  So that's when I made the decision to leave.  I didn't want a confrontation any further.

. . .

*Q:  When [Counselor] McGovern was talking to you, what did you say in response to her?*

> *A:  Initially, I declined her offer and thanked her; told her I would be done very shortly, <u>and then when she didn't give me another option other than being in her office behind a closed door, that's when I made the decision to leave.  I felt I had no other choice</u>.*

(R. at 79-83) (emphasis added).

During cross-examination by her counsel, Juarez was asked directly whether she had finished breastfeeding before being asked to relocate to a private room by Counselor McGovern.  Juarez testified that she was not finished breastfeeding but terminated the session early after being told by Counselor McGovern that she could not continue breastfeeding in the gymnasium.  (R. at 111.)

The operative question is whether Appellees interfered with Juarez as she was breastfeeding her child in the gymnasium.  The term "interfere" is not defined in the statute.  According to Merriam-Webster "interfere" is an intransitive verb which means "1:  to enter into or take a part in the concerns of others; 2:  to interpose in a way that hinders or impedes."  *Interfere*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/interfere (last visited April 17, 2023).

In concluding that Appellees did not "interfere" with Juarez as she was breastfeeding her child, the circuit court accepted Counselor McGovern's version of events over Juarez's account.  While Counselor McGovern testified that

-18-

she was merely offering Juarez the opportunity to nurse in a more private location, her testimony was inconsistent with Juarez's version of events. According to Juarez, when she refused Counselor McGovern's offer to use her office, Counselor McGovern told her that she could not breastfeed her child out in the open. When asked during her deposition if she had finished breastfeeding before she was interrupted by Counselor McGovern, she said she was not but that she stopped after being told she could no longer breastfeed her child at the school unless she was in a private office behind a door. Accepting Juarez's version of events, one could easily conclude that Counselor McGovern interrupted Juarez.

"In considering a motion for summary judgment, a trial court must view the record in a light most favorable to the non-moving party, resolving all doubts in its favor." *Waugh v. Parker*, 584 S.W.3d 748, 750 (Ky. 2019). When the testimony of the parties is in conflict, "the testimony of the party against whom the motion is made must be accepted." *McCollum v. Garrett*, 880 S.W.2d 530, 531 n.2 (Ky. 1994).

Having carefully reviewed the evidence of record, it is clear to us that the evidence was conflicting regarding what Counselor McGovern told Juarez. According to Counselor McGovern, she merely offered Juarez the option of breastfeeding her child in a more private location within the school but did not prohibit her from continuing to breastfeed in the gymnasium. Juarez, however,

-19-

testified that Counselor McGovern told her that she could not continue breastfeeding her child in the gymnasium. Since the testimony was conflicting, for the purposes of summary judgment, the circuit court should have accepted Juarez's account of the incident. *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citations omitted) ("The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment.").

Instead, the circuit court accepted Counselor McGovern's version of events to conclude as a matter of law that: (1) there was no actionable claim under KRS 211.755 because Counselor McGovern did not interfere with Juarez as she was breastfeeding where "she merely offered [Juarez] an alternative location for breastfeeding . . . [she did not] order[] Juarez to immediately cease breastfeeding [in the gymnasium]"; and (2) the Appellees were engaged in discretionary acts insomuch as they offered Juarez a private location to breastfeed but did not prevent Juarez from breastfeeding in the gymnasium. (R. at 417-19.)

The circuit court was not at liberty to accept Counselor McGovern's testimony over Juarez's testimony. In doing so, the circuit court acted in error and usurped the role of the jury. Since this matter was presented to the circuit court in the context of a summary judgment motion by Appellees, the circuit court should

have evaluated the motion by viewing the evidence in a light most favorable to Juarez, the nonmoving party, accepting as true, for the purposes of summary judgment, that Counselor McGovern approached Juarez as she was actively breastfeeding her child and told her that she could not continue breastfeeding in the gymnasium. Therefore, it is through this lens that we will evaluate the circuit court's ultimate legal conclusions.

We begin with qualified immunity analysis since immunity extends not only to the imposition of money damages but to the burdens of having to defend against suit.[11] "An immune agency's immunity extends to its employees performing discretionary tasks." *Bryant v. Louisville Metro Housing Authority*, 568 S.W.3d 839, 851 (Ky. 2019) (internal quotation marks, citation, and footnote omitted). "On the other hand, qualified immunity does not protect one who negligently performs, or fails to perform, a ministerial duty." *Armstrong v. Estate of Ifeacho by and through Ifeacho*, 633 S.W.3d 333, 339 (Ky. App. 2021).

There is no dispute that Principal Schilling and Counselor McGovern were employed by the county school board, an immune agency. Thus, the operative question is whether Principal Schilling and Counselor McGovern were engaged in discretionary or ministerial acts.

---

[11] To this end, we note that the circuit court incorrectly surmised that immunity was only an issue to the extent that the underlying claim was compensable with money damages.

Again, accepting Juarez's account as correct, we must assume that on the day in question Counselor McGovern approached Juarez as she was actively breastfeeding her child in a location she was authorized to be and told her she could not continue to breastfeed in that location. Additionally, Juarez testified that she was subsequently told by Principal Schilling during a meeting that going forward she was not permitted to breastfeed her child on school property unless she was inside a private office or room with a door.[12]

"Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, *either of which would be lawful*, and where it is left to the will or judgment of the performer to determine in which way it shall be performed." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky.

_____

[12] Testifying about her subsequent meeting with Principal Schilling, Juarez stated:

> And while they were apologetic that it happened, their position on it was that if it had happened in front of older male students that there may be some questions raised and some phone calls that they would have to field, and they weren't really prepared in a position to take on conversations of that nature, and they were trying to minimalize sensual [*sic*] conversations.

> So that's when I told them I thought it was best that I just kept my distance from the school at that point, and she hoped – [Principal] Schilling hoped that time would heal things and I might in time see things differently, and while she was sorry that the interaction took place the way it did, however, **the end result would have to be I needed to be in an office behind a door nursing going forward if I planned to be at the school**.

(R. at 87-88) (emphasis added).

2010) (emphasis added). While Appellees repeatedly state that there was no formal breastfeeding policy in place at JES, there was a statute in place, KRS 211.755, that governed Appellees' conduct. The statute is the policy.

KRS 211.755 permitted Juarez to breastfeed her child and prohibited any person from interfering with her right to do so "in any location, public or private, where the mother is otherwise authorized to be." The statute is clear and created a mandatory duty that Appellees were not to interfere with Juarez's right to breastfeed her child in any location she was authorized to be. Although Appellees assert that they were unsure at the time whether the statute applied in the public-school setting, we note that the statute does not exempt schools and explicitly includes both public and private locations.[13]

> An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. In some respects public officials must interpret the statutes imposing duties on them to form a judgment from the language of the statute as to what responsibilities are imposed. Such an intellectual activity does not make the duty of the officer anything other than a ministerial one. Accordingly, if the statute directs the officer to perform a particular act which does not involve discretion, the officer is required to do so, and the act remains ministerial despite any doubt by the official.

---

[13] Although we can appreciate the various arguments made by Appellees concerning interruption to the learning process and the concerns of parents, it is not our prerogative to create exceptions where the General Assembly has acted so unambiguously.

*County of Harlan v. Appalachian Regional Healthcare, Inc.*, 85 S.W.3d 607, 613 (Ky. 2002).

While we agree with the circuit court that Appellees had a certain amount of discretion in dealing with a teacher complaint, including offering Juarez an alternative location where she could breastfeed in private, KRS 211.755 mandated that Appellees could not prohibit Juarez from breastfeeding in the gymnasium, a place she was authorized to be. In other words, Appellees did not have the discretion to order Juarez not to breastfeed out in the open, as she testified Counselor McGovern did on March 15, 2019, and Principal Schilling did during the March 26, 2019, meeting. Since the facts were disputed regarding whether Appellees told Juarez that she could not breastfeed in the open at JES or merely offered her a more private location, the circuit court erred in concluding that Appellees were entitled to qualified official immunity.

We now turn to Juarez's claim under KRS 211.755. While it is true that KRS 211.755 does not provide for a civil remedy, KRS 446.070, known as the negligence *per se* statute,[14] provides that "[a] person injured by the violation of ***any*** statute may recover from the offender such damages as he sustained by reason of

---

[14] "The Kentucky General Assembly enacted this statute in 1942 to codify common law negligence per se." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (citation omitted).

the violation." KRS 446.070.[15] "In accord with traditional legal principles related to the common law concept of negligence per se, the statute applies when the alleged offender violates a statute and the plaintiff comes within the class of persons intended to be protected by the statute." *St. Luke Hosp., Inc.*, 354 S.W.3d at 534 (citation omitted).

Juarez, a breastfeeding mother, is certainly within the class of persons that KRS 211.755 was designed to protect. In granting summary judgment in favor of Appellees, the circuit court concluded that Appellees did not interfere with Juarez's right to breastfeed her child because they did not tell her she could not breastfeed in the gymnasium; they merely offered her an alternative, more private location to breastfeed her child in the school. As already discussed, the circuit court erred in this regard by crediting Appellees' testimony over Juarez's testimony. If one accepts Juarez's testimony as correct, a jury could easily conclude that Appellees interfered with Juarez's right to breastfeed by telling her that she could not continue to breastfeed out in the open.

This brings us to the circuit court's alternative conclusion that even if Juarez had established a *prima facie* violation of KRS 211.755, she could still not

---

[15] Juarez's amended complaint alleged a count of negligence *per se* in violation of KRS 211.755. (R. at 284.)

prevail because she failed to come forward with evidence of any actionable damages. To this end, the circuit court reasoned:

> [KRS 211.755] does not expressly provide for statutory damages or a private right of action. She claims no out-of-pocket/special damages; she essentially seeks emotional distress damage. Broadly speaking, Kentucky tort law does not permit recovery of such damages absent a "touching." There are exceptions such as the intentional or reckless infliction of emotional distress (a/k/a) outrage. But that was not pled here, and the facts would not meet the requirements of that cause of action in any event.

(R. at 416.)

The circuit court incorrectly concluded that Kentucky still follows the touching rule for emotional distress. In *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012), the Supreme Court abandoned the traditional impact/touching rule for emotional distress damages, holding that, going forward, cases seeking recovery for negligent infliction of emotional distress should be analyzed according to "general negligence principles." *Id.* However, the Court limited recovery to cases where the emotional injury is "severe" or "serious." *Id.* The Court further held that "a plaintiff claiming [to have suffered severe or serious] emotional distress must present expert medical or scientific proof to support the claimed injury or impairment." *Id.* at 17-18.

Following *Osborne*, most courts required expert proof any time a plaintiff sought to recover damages for emotional distress. *Keaton v. G.C.*

-26-

*Williams Funeral Home, Inc.*, 436 S.W.3d 538, 544-45 (Ky. App. 2013). In

*Indiana Insurance Company v. Demetre*, 527 S.W.3d 12 (Ky. 2017), the Kentucky

Supreme Court confronted the question of *Osborne*'s reach when emotional

distress damages are being sought pursuant to a statute and not simply as part of a

common law negligence claim.

Ultimately, the Court determined that the *Osborne* rule applied only to

common law intentional or negligent infliction of emotional distress claims. Stated

differently, the Court held that *Osborne*'s requirement of expert testimony does not

apply to emotional distress damages claimed as part of statutory or contractually

based causes of action that expressly permit recovery for emotional distress. *Id.* at

36.

> Accordingly, we hold that *Osborne*'s requirement of
> expert medical or scientific proof is limited to claims of
> intentional or negligent infliction of emotional distress.
> Our conclusion is due in part to the recognition that
> claims for emotional damages grounded in breach of
> contract or violation of statute, such as those alleged by
> Demetre in the case at bar, are less likely to be fraudulent
> than those advanced under a free-standing claim of
> intentional or negligent infliction of emotional distress.
> To evaluate whether emotional damages are appropriate
> in those cases that do not allege the free-standing torts of
> intentional or negligent infliction of emotional distress,
> we have historically relied on our trial courts and the jury
> system to evaluate the evidence and determine the merits
> of the alleged claims. *See Curry* [*v. Fireman's Fund Ins.
> Co.*, 784 S.W.2d 176, 178 (Ky. 1989)] ("Throughout the
> history of Anglo-American law, the most important
> decisions societies have made have been entrusted to

duly empaneled and properly instructed juries. Decisions as to human life, liberty and public and private property have been routinely made by jurors and extraordinary confidence has been placed in this decision-making process."); *Goodson* [*v. American Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 417 (Colo. 2004)] ("[T]he jury system itself serves as a safeguard; we routinely entrust the jury with the important task of weighing the credibility of evidence and determining whether, in light of the evidence, plaintiffs have satisfied their burden of proof."). We see no compelling reason to depart from this view.

*Id.* at 39.

The claim at issue in *Demetre* was based on an alleged violation of the Kentucky Consumer Protection Act and the Unfair Claims Settlement Practices Act. As noted by the Court, "damages for anxiety and mental anguish" are recoverable in an action for *statutory* bad faith. *Id.* Therefore, because Demetre's statutory cause of action permitted recovery for emotional distress damages, he did not have to resort to proving entitlement to those damages through a free-standing negligence claim and did not have present expert testimony as required by *Osborne*. *Id.*

Here, while Juarez alleged a statutory cause of action predicated on Kentucky's breastfeeding statute and common law negligence *per se* as codified by KRS 446.070, unlike the statutes at issue in *Demetre*, these statutes do not expressly provide for recovery of emotional distress damages. Juarez's recovery for emotional distress hinges on her ability to demonstrate free-standing

-28-

*negligence*; emotional distress damages predicated on a negligence claim fall squarely within *Osborne*'s rule requiring expert medical or scientific proof to support the claimed injury or impairment.  Because Juarez had no such proof, the circuit court was correct in its conclusion that Appellees were entitled to summary judgment with respect to Juarez's demand for recovery of emotional distress damages.

However, this does not mean Appellees were entitled to summary judgment on Juarez's KRS 446.070 negligence *per se* claim.  As explained above, Juarez presented *prima facie* evidence that Appellees violated KRS 211.755 by interfering with her right to breastfeed her child.  "[W]here a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where, from the nature of the case, some injury has been done in the amount of which the proof fails to show.  The law infers some damage from the breach of an agreement or the invasion of a right; and . . . it declares the right by awarding . . . nominal damages."[16]  *W. Union Tel. Co. v. Guard*, 283 Ky. 187, 139 S.W.2d 722, 728 (1940) (internal quotation marks omitted).

---

[16] "Nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." *Stoll Oil Refining Co. v. Pierce*, 343 S.W.2d 810, 811 (Ky. 1961) (internal quotation marks and citation omitted).

Even if one assumes that Juarez did not put forth sufficient proof of emotional distress to place the issue of compensatory damages for emotional distress before the jury, she would still be entitled to nominal damages to the extent she can establish a cause of action under KRS 211.755 and 446.070. "Generally, in instances where a litigant establishes a cause of action but has not established an entitlement to compensatory damages, nominal damages may be awarded." *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 907 (Ky. App. 2015).

Nominal damages, in turn, are sufficient to support an award of punitive damages. "The rule that punitive damages may be awarded even when a nominal amount is awarded as damages was established early in our jurisprudence[.]" *Id.*

> It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. In our opinion, however, this view is not correct, and does not agree with a great weight of authority. The correct rule, we think, is that if a right of action exists; that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount, he may in a proper case recover punitive damages.

*Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 166 (Ky. 2000) (quoting *Louisville & N.R. Co. v. Ritchel*, 148 Ky. 701, 147 S.W. 411, 414 (1912)). "Facts must be established that, apart from punitive damages, are sufficient to maintain a

cause of action, but although the appropriate award for compensatory damages would be only *nominal*, nominal damages support an award for punitive damages." *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984).

While the evidence in favor of punitive damages appears weak at best, the circuit court did not separately consider the issue of punitive damages in its summary judgment. It is entirely possible that summary judgment might be appropriate on the punitive damages claim; however, since the circuit court did not consider the issue and the parties have not separately briefed it, this Court will refrain from prematurely weighing in on the issue. *Tavadia v. Mitchell*, 564 S.W.3d 322, 328 (Ky. App. 2018) ("Further, even if [Appellant] suffered no compensatory damages, the trial court should have considered nominal damages and then addressed his claims for punitive damages and attorney's fees. The trial court clearly erred in summarily dismissing those claims.").

## IV. CONCLUSION

For the reasons set forth above, we affirm the Jefferson Circuit Court's summary judgment in favor of Appellees with respect to Juarez's claim under the Kentucky Civil Rights Act and with respect to her claim for emotional distress damages; however, we reverse the circuit court decision that Appellees are entitled to qualified immunity and/or summary judgment as a matter of law with respect to Juarez's KRS 211.755/KRS 446.070 claim. Disputed issues of material

fact preclude summary judgment on the issues of qualified immunity and liability under KRS 211.755 and KRS 446.070.  As such, those matters are remanded for further proceedings.


ALL CONCUR.


BRIEF FOR APPELLANT:

Teddy B. Gordon
Louisville, Kentucky

BRIEF FOR APPELLEES BROOKE SCHILLING AND HEATHER MCGOVERN:

C. Tyson Gorman
Julie Laemmle Watts
Alexa J. Elder
Louisville, Kentucky